UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| In re | |
|---|---|
| SKS Bottle and Packaging, Inc., | Chapter 11<br>Case No. 24-11283 |
| Debtor. | |

## MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING, BUT NOT REQUIRING, CONTINUED USE OF PRE-PETITION BANK ACCOUNT, BANKING PRACTICES, AND BUSINESS FORMS

SKS Bottle and Packaging, Inc., (the "Debtor"), by its counsel, Nolan Heller Kaufman LLP, respectfully moves this Court (this "Motion"), for the entry of interim and final orders, substantially in the form of the proposed orders attached hereto as Exhibits "A" and "B", respectively, authorizing, but not requiring, continued use of prepetition Bank Account, banking practices, and business forms. In support of this Motion, the Debtor respectfully represents as follows:

## BACKGROUND

1.      This case was commenced by the filing of a Chapter 11 petition on November 18, 2024 (the "Filing Date").

2.      The Debtor is a corporation organized under the laws of the State of New York and maintains its principal place of business at 10 Skyward Drive, Saratoga Springs, New York, 12866. The Debtor continues to operate as a debtor and debtor in possession pursuant to 11 U.S.C. §1107 and §1108 of the Code.

3.      The Debtor is a container and packaging supplier, consultant, and designer, specializing in online sales of plastic bottles, glass bottles, plastic jars, glass jars, metal containers, and closures. The Debtor's business experienced significant and rapid growth through 2019, operating out of state of the art facilities in Saratoga Springs, New York and Reno, Nevada. As of 2019, annual revenues totaled $44.79 million. The

1

supply chain disruptions following the COVID-19 pandemic severely constrained the Debtor's inventory availability, resulting in progressive reductions in sales and revenue.   Revenue had fallen to $17.1 million in 2022, $ 10.33 million in 2023, and is expected to have fallen to $5.6 million in 2024.

4.       In order to help alleviate financial pressures, in  2023, the Debtor completed a sale-leaseback transaction with Green Mountain Electric Supply ("GMES") whereby GMES purchased and leased the Saratoga facility back to the Debtor..   The sale proceeds were used to pay off the Debtor's existing mortgage loan on the facility, funded future rents to GMES, and provided the Debtor with working capital. Unfortunately, the proceeds of the sale-leaseback were not adequate to allow the Debtor to reverse its downward trend.

5.       The Debtor's filing was precipitated by, among other things, the commencement of eviction proceeding by Green Mountain Electric Supply, Inc., to dispossess the Debtor of possession of its principal place of business in Saratoga.

## JURISDICTION AND VENUE

6.       The Debtor is a debtor and debtor-in-possession pursuant to 11 U.S.C. §1107 and 1108.  This Court has jurisdiction over the Debtor pursuant to 28 U.S.C. §§157 and 1334.  Venue is proper pursuant to 28 U.S.C. §1408.

## RELIEF REQUESTED

7.       By this Motion, the Debtor requests that the Court enter interim and final orders (I) authorizing, but not directing, the Debtor to (i) continue using of its existing Bank Account; (ii) treat the Bank Account as Debtor in possession accounts; and (iii) continue use of its business forms, including, but not limited to, letterhead, invoices, statements and similar business forms and waiving the requirement that such business forms include the term "Debtor in possession".

**I.       Bank Account**

8.       The Debtor maintains a depository account with NBT Bank, N.A.  (the "Depository

2

Bank") for the following account (the, "Bank Account"):

| Account Title | Depository Bank | Last four digits of account number |
|---|---|---|
| SKS Bottle and Packaging, Inc. | NBT Bank, N.A. | 7484 |

10.     In the ordinary course of its operations, the Debtor receives or deposits funds to, and disburses payments and funds from, the Bank Account.  Additionally, in the ordinary course of its business, the Debtor pays or transfers funds for purposes related to its operations and provision of services among its accounts as necessary to satisfy the ordinary, ongoing expenses for the Debtor's operations including: payroll, withholding taxes, and employee benefits (collectively, the "Cash Management System").

9.     By this Motion, the Debtor respectfully requests that it be permitted to continue to maintain the Bank Account at the Depository Bank.

10.     Under the terms of the relevant account documentation, the Depository Bank imposes certain service charges or fees, including attorney's fees (collectively, "Bank Charges") for account maintenance or transaction fees. Such Bank Charges are a cost of maintaining the Bank Account. Further, the relevant account documentation permits the Depository Bank to setoff the Bank Charges against funds on deposit with the banks.  Such setoff rights are superior to claims of unsecured creditors.  The Debtor also seeks the authority, but not the direction, to pay any outstanding pre-petition Bank Charges.  As noted, the relevant account documentation provides for payment of the Bank Charges and the Depository Bank's right to set off those charges against funds on deposit in the Bank Account.  Accordingly, the Debtor respectfully requests that it be authorized, but not directed, to pay any accrued but unpaid pre-petition Bank Charges, and that the automatic stay provisions of 11 U.S.C. §362(a) be deemed modified as necessary so as to permit the Depository Bank to set off the Bank Charges from the Bank Account.

11.	The Debtor further requests that the Depository Bank be permitted to charge the Bank Account for any undisputed fees or service charges specifically provided for under the respective account documentation for each account that are due but not yet paid as of the Filing Date and, further, that the Depository Bank be authorized and directed to receive, process, honor and pay (i) all post-petition checks, drafts, wire transfers or other electronic payments (provided there are sufficient funds on deposit to cover the transactions); and (ii) honor and pay any pre-petition checks or other transactions for which the Court has authorized payment pursuant to a separate order providing for such relief.

12.	In addition, the Debtor requests that the Depository Bank be permitted to at any time, require the maintenance of minimum balances in any of the Bank Account, and/or require the Debtor to pre-fund automated clearing house ("ACH") activity in any of the Bank Account, it being understood that if an ACH transfer is initiated and there are insufficient funds on deposit at the applicable Depository Bank, the subject ACH transfer may not be processed by such Depository Bank.

13.	From time to time, the Debtor transfers funds between the Bank Account to facilitate payment of expenses or other obligations of the entities for which the Bank Account are maintained. Such transfers are for obligations arising in the ordinary course of the Debtor's operations. Accordingly, the Debtor respectfully requests that it be permitted to continue its pre-petition practices of its Cash Management System including processing debit, ACH and wire transfers to and from its Bank Account.  The Debtor has developed payment processing systems on which its vendors have come to rely and respectfully requests that it be permitted to continue those deposit and transfer methods post-petition.

## BASIS FOR RELIEF

I.     **The Court Should Approve the Debtor's Continued Use of the Bank Account, Forms and Banking Practices.**

    A.     **The Debtor's Banking Practices and Accounts are Essential to the Debtor's Ongoing Operations and Restructuring Efforts.**

14.     The Debtor has a long-standing relationship with its Depository Bank and a long-established practice with respect to its use of its Bank Account. The Debtor respectfully requests that the Court authorize it to continue using its prepetition Bank Account rather than closing them and opening new post-petition accounts.

15.     Closing the Debtor's Bank Account would cause disruption to the Debtor's operations and fulfillment of its mission.  If the Debtor was required to open new accounts as of the Filing Date, it would unnecessarily distract the Debtor's key business office personnel in an office that is already operating at maximum capacity.  In addition, changing accounts would also cause disruptions in essential deposit and automated debit activity, potentially leading to loss of revenue, missed payments or overdrafts and therefore cause harm to the Debtor's operations. Specifically, key operating expenses such as payroll and associated payroll taxes, payments for health insurance claims under the Debtor's health plan, and workers compensation payments are all automatically withdrawn from the Debtor's operating account.  As a result, the Debtor respectfully submits it is appropriate to maintain its prepetition Bank Account and practices.

16.     The continued use of the existing Bank Account will facilitate the Debtor's transition into this Chapter 11 case by, among other things, avoiding administrative inefficiencies and expenses and minimizing delays in payment of post-petition debts.  The Debtor respectfully submits that parties in interest will not be harmed by the continued maintenance of its Bank Account because, with the assistance of professionals, the Debtor has implemented appropriate mechanisms to ensure that

unauthorized payments will not be made on account of obligations incurred prior to the Filing Date.

**B.      Strict Adherence to the U.S. Trustee's Guidelines Would Cause Substantial Disruption to Debtor's Operations.**

17.      The U.S. Trustee has promulgated Operating Guidelines and Financial Reporting Requirements for Debtors in Possession and Trustees (the "U.S. Trustee Guidelines")[1] which require debtors in bankruptcy to: (a)  close all existing Bank Account and open new Debtor-in-possession accounts; (b) maintain a separate Debtor-in-possession account for cash collateral; and (c) obtain checks that bear the designation "Debtor in possession," unless the bankruptcy court orders otherwise. Although they may reflect good practices in many cases, the U.S. Trustee Guidelines do not have the force of law.  *See In re Johnson*, 106 B.R. 623, 624 (Bankr.D. Neb. 1989) ("[T]he Guidelines themselves cannot require bankruptcy debtors to comply with their provisions because the Guidelines do not carry the force or effect of law.");  In *re Crosby*, 93 B.R. 798, 802-805 (Bankr. S.D. Ga. 1988) (noting that "requirements" established by the U.S. Trustee are subject to the bankruptcy court's judicial oversight).  Accordingly, bankruptcy courts can and do authorize debtors to deviate from the requirements of the U.S. Trustee Guidelines in appropriate circumstances.  The Debtor respectfully submits that this is such an appropriate circumstance and asks that in order to allow it to continue to operate its business in the ordinary course, it should be relieved of strict adherence to the U.S. Trustee Guidelines with respect to the maintenance of its existing Bank Account and banking practices.

18.      One of the purposes of the U.S. Trustee Guidelines is to provide a clear line of demarcation between prepetition and post-petition claims and payments to help prevent inadvertent payment of prepetition claims, by voiding checks drawn before the Filing Date.  As discussed below, the Debtor will ensure a separation between pre- and post-petition financial activity

---

[1] *See* https://www.justice.gov/ust-regions-r02/file/region_2_operating_guidelines.pdf/download.

through clear record keeping.

19.       The Debtor submits that maintaining the existing Bank Account will facilitate the Debtor's ability to collect, deposit and account for receipts and pay post-petition bills.  Closing the Bank Account would require the Debtor to open new accounts and arrange alternative procedures for electronic and manual transfers to and from the Bank Account.  The result would be a disruption of processing payments, and similarly would disrupt wire transfers, payroll obligations, and post-petition obligations to vendors and other creditors.

20.       The Debtor also requests authority to preserve various reporting and accounting mechanisms, such as signatory authorizations and accounting systems central to the maintenance of the Bank Account.  The interruption or termination of such reporting and accounting mechanisms would undermine the utility of the Bank Account.  In accordance with existing practices, the Debtor will maintain strict records of all receipts and disbursements from the Bank Account during the pendency of this case and will ensure that its records properly distinguish between pre-petition and post-petition transactions and report accordingly to the U.S. Trustee.

21.       The Debtor also respectfully submits that maintenance of the Bank Account will avoid delays in payments to administrative creditors, ensure a smooth transition into Chapter 11, and facilitate the Debtor's efforts to complete this Chapter 11 Case expeditiously and successfully.  Thus, the Debtor respectfully requests that its existing Bank Account be deemed debtor-in-possession accounts and that the maintenance and continued use of those accounts (in the same manner and with the same account numbers, styles and document forms as those employed during the prepetition period) be authorized, subject only to a prohibition against honoring prepetition checks without specific authorization from this Court.

7

22.	NBT Bank, N.A. is listed on the U.S. Trustee's authorized depositories list for cases filed in the Albany Division of the Northern District of New York.   As of the Filing Date, the balance of the Bank Account does not exceed the FDIC insured limit.

23.	Courts in this District and elsewhere within Region 2 have waived the U.S. Trustee Guidelines to allow the continued use of cash management and pre-petition Bank Account employed in the ordinary course of the debtor's pre-petition business.  *See, e.g.*, *In re Good Samaritan Lutheran Health Care Center*, Case No. 19-12215 (Bankr. N.D.N.Y. Feb. 3, 2020) [Docket No. 119]; *In re Rochester Drug Co-Operative, Inc.*, Case No. 20-20230 (Bankr. W.D.N.Y. May 19, 2020) [Docket No. 316]; *In re The Diocese of Rochester*, Case No. 19-20905 (Bankr. W.D.N.Y., Sep. 13, 2019) [Docket No. 29]; *In re Centerstone Linen Services, LLC*, Case No. 18- 31754 (Bankr. N.D.N.Y., Dec. 20, 2018) [Docket No. 26]; *In re Datacom Systems, Inc.*, (Bankr. N.D.N.Y. June 7, 2018) [Docket No. 38]; *In re Carthage Specialty Paperboard, Inc.*, Case No. 18-30226 (Bankr. N.D.N.Y. Mar. 2, 2018) [Docket No. 34]; *In re Auburn Armature, Inc.*, Case No. 17-30743) (Bankr. N.D.N.Y. May 24, 2017) [Docket No. 29].

24.	Strict adherence to the U.S. Trustee Guidelines in this Chapter 11 Case would significantly disrupt the ordinary financial operations of the Debtor, reducing efficiencies and causing unnecessary expense, while providing little benefit to creditors.  The Debtor respectfully requests that the Court waive the requirements of the U.S. Trustee Guidelines in this Chapter 11 Case as requested herein.

### C.	The Debtor Should be Granted Authority to Use Existing Business Forms and Checks.

25.	To minimize expenses and disruption to the Debtor's chapter 11 estate, the Debtor respectfully requests authority to continue to use all correspondence and business forms (including letterhead, purchase orders, envelopes, charitable solicitation material, invoices and the like) as such

forms were in existence immediately before the Filing Date, without reference to the Debtor's status as debtor-in-possession. The Debtor also requests authorization to use the existing check stock without the "debtor-in-possession" label for checks that it manually writes. As soon as practicable after the Filing Date, the Debtor will include "debtor-in-possession" or "DIP" on any checks it prints electronically.

26.     By virtue of the nature and scope of the Debtor's operations and the number of suppliers of goods and services with whom the Debtor transacts on a regular basis, it is important that the Debtor be permitted to continue to use its existing checks and other business forms without alteration or change, except as requested herein. Indeed, changing business forms is unnecessary and unduly burdensome, as it would appear that the parties doing business with the Debtor will be aware of the Debtor's status as Debtor-in-possession as a result of the anticipated media  coverage of this Chapter 11 Case and because the Debtor intends to distribute communications and notices of commencement of this Chapter 11 Case to such parties. Moreover, if the Debtor is required to change its current business forms, the new forms may cause confusion to the Debtor's employees, vendors, and donors. The Debtor also believes that it would be costly and disruptive to cease using all existing forms and to purchase new stationery and business forms. Accordingly, the Debtor seeks a waiver of the U.S. Trustee Guidelines with respect to the continued use of its business forms and checks.

**D.     The Debtor Should Be Authorized to Continue Using Debit, Wire and ACH Payments.**

27.     The Debtor requests further relief from adherence to the U.S. Trustee Guidelines to the extent doing so would require that all receipts and all disbursements of estate funds be by check with a notation representing the reason for the disbursement. Considering the nature of the Debtor's operations, in certain instances, it may be necessary for the Debtor to conduct transactions by debit,

wire or ACH payment processing and other similar methods, as discussed above. The Debtor

maintains accurate records and will be able to properly account for any such transactions. The

Debtor, therefore, requests that its banks and other financial institutions be authorized to continue

to pay, honor and execute any and all debit instructions, wires and ACH payments issued and drawn

on the Bank Account after the Filing Date.

> **E.     The Debtor Should Be Authorized to Honor Certain Pre-petition Obligations Related to its Accounts.**

28.     In accordance with its contractual arrangements with the various financial

institutions where it maintains its Accounts, the Debtor incurs the Bank Charges in connection with

the maintenance of the Bank Account.  Payment of the prepetition Service Charges is in the best

interests of the Debtor and all parties in interest in this Chapter 11 Case, as it will prevent any

disruption to the Bank Account.  Further, in many instances, the financial institutions have setoff

rights for the Bank Charges and therefore payment of those prepetition charges should not alter the

rights of unsecured creditors in this Chapter 11 Case.  Accordingly, by this Motion, the Debtor also

seeks authority to pay, at the Debtor's sole discretion, prepetition Bank Charges, if any.

## **BANKRUPTCY RULE 6003 IS SATISFIED**

29.     Bankruptcy Rule 6003 provides that a bankruptcy court may approve a motion to

"use, sell, [or] lease" property of the estate, or to "pay all or part of a claim that arose before the

filing of the petition," prior to twenty-one (21) days after the filing of the petition, "to the extent

that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.

Immediate and irreparable harm exists where, as is the case here, the absence of relief would impair a

Debtor's ability to reorganize or threaten the Debtor's future as a going concern.  *See In re Ames*

*Dep't. Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of

"immediate and irreparable harm" in the context of Bankruptcy Rule 4001).  The Debtor submits that

10

the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, as described herein and to the extent that denial of the requested relief would immediately and negatively impact the Debtor's day-to-day operations, and that cause exists under Bankruptcy Rule 6003 for the Court to grant immediate relief.

## WAIVER OF NOTICE AND STAY REQUIREMENTS

30.     To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rules 6004(h), 7062, 9014 or otherwise.

## RESERVATION OF RIGHTS

31.     Nothing contained in this Motion is intended to or shall: (a) be construed as an admission as to the validity of any claim against the Debtor; (b) impair, prejudice, waive or otherwise affect the rights of the Debtor or its estate to dispute the amount of, basis for, nature, validity or priority of any claim against the Debtor; (c) impair, prejudice, waive or otherwise affect the rights of the Debtor or its estate with respect to any and all claims or causes of action which may exist against any third party; (d) be construed as an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code; and (e) create any rights in favor of, or enhance the status or nature of any claim held by, any person.  Authorization to pay the claims described in this Motion should not be deemed a direction to the Debtor to pay such claims; rather, the Debtor will make any such payments in its discretion.  In addition, any payment made pursuant to an order of the Court granting the relief requested in this Motion is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of any of the Debtor's rights to subsequently dispute such claim, and the Debtor expressly reserves its rights with respect thereto.

## NOTICE

32.     Notice of this Motion will be given to (i) the Office of the United States Trustee for the Northern District of New York, (ii) the Debtor's twenty (20) largest unsecured creditors as set forth in the list filed with the Debtor's petition, and (iii) NBT Bank, N.A.  In light of the nature of the relief requested herein, the Debtor submits that no further notice is required.

## NO PRIOR REQUEST

33.     The Debtor has not previously sought the relief requested herein from this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court enter interim and final orders, substantially in the form of the proposed orders attached hereto as **Exhibits A** and **B** respectively, granting the relief requested herein and providing such other and further relief as the Court deems just and proper.

**Dated:**    Albany, New York
            November 18, 2024            **NOLAN HELLER KAUFFMAN LLP**

                                By:    /s/Justin Heller
                                       Justin A. Heller, Esq.
                                       Matthew M. Zapala, Esq.
                                       *Proposed Attorneys for SKS Bottle and*
                                       *Packaging, Inc.*
                                       80 State Street, 11th Floor
                                       Albany, New York 12207

**<u>EXHIBIT A</u>**

Proposed Interim Order

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| In re | |
|---|---|
| SKS Bottle and Packaging, Inc., | Chapter 11<br>Case No. 24-1____ |
| Debtor. | |

**INTERIM ORDER AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR'S CONTINUED USE OF PRE-PETITION BANK ACCOUNT, BANKING PRACTICES, AND BUSINESS FORMS**

Upon the motion of SKS Bottle and Packaging, Inc., (the "Debtor") for entry of interim and final orders (a) authorizing, but not directing, the Debtor to continue using its existing Bank Account, banking practices, and business forms, [Docket No. ____] (the "Motion")[1]; and it appearing that the Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of this Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding

---

[1] Capitalized terms not defined herein shall have the meanings set forth in the Motion.

pursuant to 28 U.S.C. § 157(b); and it appearing that proper and adequate notice of the Motion has

been given under the circumstances and that, except as otherwise ordered herein, no other or further

notice is necessary; and the Court having reviewed the Motion and the record in this Chapter 11

Case and determined that granting the relief requested in the Motion on an interim basis is in the

best interests of the Debtor, its estate, creditors and other parties in interest; and after due

deliberation thereon, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtor is authorized to: (a) continue to use, with the same account numbers,

all of its Bank Account in existence as of the Filing Date as described in the Motion; (b) use, in their

present form, all correspondence and business forms including, but not limited to, letterhead,

purchase orders and invoices), as well as checks and other documents related to the Bank Account

existing immediately before the Filing Date, without reference to the Debtor's status as debtor-in-

possession; provided, however, that as soon as practicable, the Debtor shall print "DIP" or "debtor

in possession" on any electronically printed payment checks; (c) treat the Bank Account for all

purposes as debtor-in-possession account, including specifically taking such steps as may be

necessary to delineate and separately account for prepetition and post-petition transactions; (d) pay

the Bank Charges, including any prepetition amounts, and any ordinary course Bank Charges,

including, without limitation, all customary fees (including attorneys' fees), costs, charges and

expenses incurred in connection with the Bank Account; and (e) otherwise perform its obligations

under the documents governing the Bank Account (collectively, the "Bank Account Agreements"),

including, without limitation, (i) the obligation to reimburse the Depository Bank for any checks,

drafts, wire transfers, automated clearing house entries, credits from merchant card transactions,

2

instruments, other electronic funds transfers, or other items deposited in or credited to any of the Bank Account with such Depository Bank that have been (A) dishonored or returned unpaid or otherwise uncollected, whether for insufficient funds or any other reason, or (B) subject to adjustments or corrections of posting or encoding errors, and (ii) any other reimbursement or other obligations arising under the Bank Account Agreements, including, without limitation, the obligation to repay any overdrafts in the Bank Account (collectively, (i) and (ii), the "Bank Account Claims").  Except to the extent otherwise directed by the terms of this Order, all of the provisions of the Bank Account Agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.

3.       The Depository Bank is authorized to continue to maintain, service and administer the Bank Account as accounts of the Debtor as debtor-in-possession, without interruption and in the ordinary course, and to receive, process, honor and pay (i) any and all post-petition checks, drafts, wire transfers, automated clearing house entries, other electronic funds transfers, direct withdrawals and credit card payments issued and drawn on the Bank Account, together with (ii) any prepetition checks or payment requests, but solely to the extent they relate to payments or obligations approved by separate order of this Court.

4.       The Debtor is authorized to direct the Depository Bank, and the Depository Bank is authorized to rely on the Debtor's direction, to pay obligations in accordance with this Interim Order or any separate order of this Court.  The Depository Bank shall not be liable to any party on account of following the Debtor's instructions or representations as to whether any order of this Court has authorized the honoring of any prepetition checks, drafts, wires or other transfers, and shall have no duty to independently inquire as to whether such payments are authorized by an order of this Court.  The Depository Bank shall not be liable to the Debtor or to its estate and shall not

3

be deemed to be in violation of this Order for honoring a prepetition check or other item drawn on any Bank Account that is the subject of this Order (a) at the direction of the Debtor, (b) in a good faith belief that this Court has authorized such prepetition check or item to be honored, (c) that is not the subject of a stop payment order, or (d) as a result of a good faith error made despite implementation of reasonable item handling procedures.

5.      The Depository Bank shall not honor or pay any bank payments drawn or otherwise issued prior to the Filing Date for which the Debtor specifically issued a stop payment order in accordance with the Bank Account Agreements.  As soon as practicable after the entry of this Interim Order, the Debtor shall serve a copy of this Interim Order on those Depository Bank that make disbursements pursuant to the Debtor's banking practices.

6.      The Depository Bank is authorized, without further order of this Court, to charge and deduct from the appropriate Bank Account, and the Debtor is authorized to pay or honor, both prepetition and post-petition Bank Charges, Bank Account Claims and any other service charges, management or administrative charges, and other fees, costs, charges and expenses to which such Depository Bank may be entitled under the terms of and in accordance with the Bank Account Agreements.

7.      In the event that the Depository Bank is unable for any reason to deduct any amounts due for Bank Charges or Bank Account Claims from the applicable Bank Account, the Debtor shall within seven (7) calendar days, upon demand, reimburse or pay such Depository Bank such amounts and, to the extent the Debtor fails to reimburse or pay any such amounts on demand, then such Depository Bank shall have an allowed administrative claim for such amounts pursuant to 11 U.S.C. §503(b).

8.      The Depository Bank is authorized to, without further order of this Court, require the

maintenance of minimum balances in any of the Bank Account, and/or require the Debtor to pre-fund automated clearing house ("**ACH**") activity in any of the Bank Account, it being understood that if an ACH transfer is initiated and there are insufficient funds on deposit at the applicable Depository Bank, the subject ACH transfer may not be processed by such Depository Bank.

9.      The Debtor is authorized to open any new Bank Account or close any existing Bank Account as it may deem necessary and appropriate in its sole discretion; provided, however, that the Debtor may only open a new bank account with a banking institution designated as an authorized depository under the U.S. Trustee Guidelines (an "Authorized Depository"), unless first obtaining the consent of the U.S. Trustee.

10.     Nothing in this Order shall (a) impair, prejudice, waive, modify, discharge or otherwise affect the rights, recourses, or remedies of the Depository Bank under any of the Bank Account Agreements or account documentation, at law or in equity, against any third parties, or (b) impair, prejudice, waive, modify, discharge or otherwise affect any of the terms of any of the Bank Account Agreements or account documentation as related to any third parties.

11.     To the extent the implementation of this Order does not comply with the applicable requirements under the U.S. Trustee Guidelines, or otherwise, such requirements under the U.S. Trustee Guidelines, are waived.

12.     The requirements set forth in Local Bankruptcy Rule 9013-5(a) are satisfied by the contents of the Motion or are otherwise deemed waived.

13.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or are otherwise deemed waived.

14.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, this Interim Order shall be effective and enforceable immediately upon its entry.

5

Notwithstanding any objection to the Motion or this Interim Order, this Interim Order shall remain in effect until further order of this Court. Any subsequent modification or vacatur of this Interim Order shall not invalidate or impair any actions taken pursuant to this Interim Order prior to such modification or vacatur.

15.     Nothing in the Motion or this Interim Order, nor the Debtor's payment of any amounts pursuant to this Interim Order, if any, shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver or impairment of the Debtor's rights to contest the validity or amount of any claim on any grounds, (iii) a promise to pay any claim, or (iv) an implication or admission by the Debtor that such claim is payable pursuant to this Interim Order.

16.     A final hearing on the Motion (the "Final Hearing") shall be held on [_____],[__:__] [a.m./p.m.] (prevailing Eastern time). Any objections or responses to the Motion shall be filed and served as required by the Local Rules on or before on [_____], 2024 at _____ a.m./p.m. (prevailing Eastern time). This Interim Order, and all acts taken in furtherance of or reliance upon this Interim Order, shall be effective notwithstanding the filing of an objection. In the event no objections or responses are timely filed and served in accordance with the foregoing, the Court may enter an order granting the relief requested in the Motion on a final basis without holding a Final Hearing.

17.     The Debtor is hereby authorized to take all actions it determines are necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

18.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Interim Order.

### 

6

**<u>EXHIBIT B</u>**

Proposed Final Order

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re

SKS Bottle and Packaging, Inc.,

                                Debtor.

Chapter 11
Case No. 24-1____

**FINAL ORDER AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR'S CONTINUED USE OF PRE-PETITION BANK ACCOUNT, BANKING PRACTICES, AND BUSINESS FORMS**

Upon the motion of SKS Bottle and Packaging, Inc., (the "Debtor") for entry of interim and final orders (a) authorizing, but not directing, the Debtor to the Debtor to continue using its existing Bank Account, banking practices, and business forms (the "Motion")[1] and it appearing that the Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of this Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and it

_____

[1] Capitalized terms not defined herein shall have the meanings set forth in the Motion.

appearing that proper and adequate notice of the Motion has been given under the circumstances and that no other or further notice is necessary; and an order granting the relief requested in the Motion on an interim basis having been entered on [____], 2024 [Docket No. __]; and the Court having reviewed the Motion and the record in this Chapter 11 Case and determined that granting the relief requested in the Motion on a final basis is in the best interests of the Debtor, its estate, creditors and other parties in interest; and after due deliberation thereon, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      Any objections to the Motion, or to the relief requested therein, that have not been made, withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and disallowed on the merits.

3.      The Debtor is authorized to continue using its banking practices as described in the Motion.

4.      The Debtor is authorized to: (a) continue to use, with the same account numbers, all of its Bank Account in existence as of the Filing Date as described in the Motion (collectively, the "Bank Account"); (b) use, in their present form, all correspondence and business forms (including, but not limited to, letterhead, purchase orders and invoices), as well as checks and other documents related to the Bank Account existing immediately before the Filing Date, without reference to the Debtor's status as debtor-in-possession; provided, however, that as soon as practicable, the Debtor shall print "DIP" or "debtor in possession" on any electronically printed payment checks; (c) treat the Bank Account for all purposes as debtor-in-possession accounts, including specifically taking such steps as may be necessary to delineate and separately account for prepetition and post-petition transactions; (d) pay the Bank Charges, including any prepetition

2

amounts, and any ordinary course Bank Charges, including, without limitation, all customary fees (including attorneys' fees), costs, charges and expenses incurred in connection with the Bank Account; and (e) otherwise perform its obligations under the documents governing the Bank Account (collectively, the "Bank Account Agreements"), including, without limitation, (i) the obligation to reimburse the Depository Bank for any checks, drafts, wire transfers, automated clearing house entries, credits from merchant card transactions, instruments, other electronic funds transfers, or other items deposited in or credited to any of the Bank Account with such Depository Bank that have been (A) dishonored or returned unpaid or otherwise uncollected, whether for insufficient funds or any other reason, or (B) subject to adjustments or corrections of posting or encoding errors, and (ii) any other reimbursement or other obligations arising under the Bank Account Agreements, including, without limitation, the obligation to repay any overdrafts in the Bank Account (collectively, (i) and (ii), the "Bank Account Claims").  Except to the extent otherwise directed by the terms of this Order, all of the provisions of the Bank Account Agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.

5.      The Depository Bank is authorized to continue to maintain, service and administer the Bank Account of the Debtor as debtor-in-possession, without interruption and in the ordinary course, and to receive, process, honor and pay (i) any and all post-petition checks, drafts, wire transfers, automated clearing house entries, other electronic funds transfers, direct withdrawals and credit card payments issued and drawn on the Bank Account, together with (ii) any prepetition checks or payment requests, but solely to the extent they relate to payments or obligations approved by separate order of this Court.

6.      The Debtor is authorized to direct the Depository Bank, and the Depository Bank is

3

authorized to rely on the Debtor's direction, to pay obligations in accordance with this Final Order or any separate order of this Court. The Depository Bank shall not be liable to any party on account of following the Debtor's instructions or representations as to whether any order of this Court has authorized the honoring of any prepetition checks, drafts, wires or other transfers, and shall have no duty to independently inquire as to whether such payments are authorized by an order of this Court.  The Depository Bank shall not be liable to the Debtor or to its estate and shall not be deemed to be in violation of this Order for honoring a prepetition check or other item drawn on any Bank Account that is the subject of this Order (a) at the direction of the Debtor, (b) in a good faith belief that this Court has authorized such prepetition check or item to be honored, (c) that is not the subject of a stop payment order, or (d) as a result of a good faith error made despite implementation of reasonable item handling procedures.

7.      The Depository Bank shall not honor or pay any bank payments arising out of the Bank Account drawn or otherwise issued prior to the Filing Date for which the Debtor specifically issued a stop payment order in accordance with the Bank Account Agreements. As soon as practicable after the entry of this Final Order, the Debtor shall serve a copy of this Final Order on the Depository Bank.

8.      The Depository Bank is authorized, without further order of this Court, to charge and deduct from the appropriate Bank Account, and the Debtor is authorized to pay or honor, both prepetition and post-petition Bank Charges, Bank Account Claims and any other service charges, management or administrative charges, and other fees, costs, charges and expenses to which such Depository Bank may be entitled under the terms of and in accordance with the Bank Account Agreements.

9.      In the event that any of the Depository Bank is unable for any reason to deduct any

4

amounts due for Bank Charges or Bank Account Claims from the applicable Bank Account, the Debtor shall within seven (7) calendar days, upon demand, reimburse or pay such Depository Bank such amounts and, to the extent the Debtor fails to reimburse or pay any such amounts on demand, then such Depository Bank shall have an allowed administrative claim for such amounts pursuant to 11 U.S.C. §503(b).

10.     The Depository Bank is authorized to, without further order of this Court, require the maintenance of minimum balances in any of the Bank Account, and/or require the Debtor to pre-fund automated clearing house ("ACH") activity in any of the Bank Account, it being understood that if an ACH transfer is initiated and there are insufficient funds on deposit at the applicable Depository Bank, the subject ACH transfer may not be processed by such Depository Bank.

11.     The Debtor is authorized to open any new Bank Account or close any existing Bank Account as it may deem necessary and appropriate in its sole discretion; provided, however, that the Debtor may only open a new bank account with a banking institution designated as an authorized depository under the U.S. Trustee Guidelines (an "Authorized Depository"), unless first obtaining the consent of the U.S. Trustee.

12.     Nothing in this Order shall (a) impair, prejudice, waive, modify, discharge or otherwise affect the rights, recourses, or remedies of the Depository Bank under any of the Bank Account Agreements or account documentation, at law or in equity, against any third parties, or (b) impair, prejudice, waive, modify, discharge or otherwise affect any of the terms of any of the Bank Account Agreements or account documentation as related to any third parties.

13.     Notwithstanding section 345 of the Bankruptcy Code and without prejudice to the Debtor's seeking an order from this Court determining that some or all of its investments are not property of the estate, the Debtor is authorized, but not directed, to continue its prepetition

investment practices and to maintain each of its Investment Accounts in the ordinary course of its business, and no bond shall be required.

14.     All accounts opened by the Debtor following the Filing Date at any bank shall be subject to the rights and obligations of this Final Order and treated as Bank Account hereunder.

15.     To the extent the implementation of this Final Order does not comply with the applicable requirements under the U.S. Trustee Guidelines, or otherwise, such requirements under the U.S. Trustee Guidelines, or otherwise are waived.

16.     Nothing in this Final Order or any action taken by the Debtor in furtherance of the implementation hereof shall be deemed an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, and the Debtor's rights with respect to such matters are expressly reserved.

17.     Nothing in the Motion or this Final Order, nor the Debtor's payment of any amounts pursuant to this Final Order, if any, shall be construed as (i) an admission as to the validity of any claim against the Debtor, (ii) a waiver or impairment of the Debtor's rights to contest the validity or amount of any claim on any grounds, (iii) a promise to pay any claim, or (iv) an implication or admission by the Debtor that such claim is payable pursuant to this Final Order.

18.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, this Final Order shall be effective and enforceable immediately upon its entry. Any subsequent modification or vacatur of this Final Order shall not invalidate or impair any actions taken pursuant to this Final Order prior to such modification or vacatur.

19.     The Debtor is hereby authorized to take all actions it determines are necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

20.     The Court shall retain jurisdiction to hear and determine all matters arising from or

related to the implementation of this Final Order.

###