UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re

SKS Bottle and Packaging, Inc.,

Debtor.

Chapter 11
Case No. 24-11283

**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL**

SKS Bottle and Packaging, Inc., the above-captioned Debtor and Debtor-in-Possession (hereinafter, "SKS" or the "Debtor"), by and through its proposed counsel, hereby moves this Court (the "Motion") for entry of interim and final orders, in substantially the form attached hereto as Exhibit A (the "Interim Order"): (i) authorizing the Debtor's use of Cash Collateral to maintain ongoing operations and avoid immediate and irreparable harm to the Debtor's estate pending a final hearing; (ii) determining that the Debtor's prepetition secured creditor's interest in cash collateral is adequately protected; and (iii) scheduling a final hearing in connection with the relief sought in this Motion. In support of this Motion, the Debtor submits as follows:

**STATEMENT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(b)(l)(B)**

1.      The only entity that holds an interest in the Debtor's cash collateral is Green Mountain Electric Supply, Inc. ("**GMES**"). The Debtor seeks authority to use cash collateral in order to maintain the Debtor's ordinary business operations during the pendency of this bankruptcy case, including meeting its payroll obligations and payment of other expenses incurred in the ordinary course of its business. The Debtor proposes for GMES to continue to receive ongoing interest payments directly from the interest reserve which GMES has been maintaining. It is the Debtor's understanding that the interest reserve will be sufficient to provide ongoing interest

1

payments on the Debtor's obligations to GMES through at least December 31, 2024. Once the interest reserve is exhausted, the Debtor proposes to make monthly payments of $3,500.00 to GMES during the pendency of the case. Furthermore, GMES's interest in the Debtor's cash collateral is adequately protected because GMES has a blanket, first-priority, lien on all of the Debtor's personal property, including the Debtor's inventory, equipment, and racking systems. The principal balance owed to GMES is $842,000.00. As explained below, the aggregate amount of GMES's collateral is in excess of $3,700,000.00.

2. In addition, and as further protection for GMES, the Debtor proposes that GMES be provided replacement liens in all of the Debtor's pre-petition and post-petition assets.

3. Accordingly, for these reasons, the Debtor believes that GMES is over secured and will be adequately protected throughout the pendency of this case.

## JURISDICTION, VENUE AND BASIS FOR RELIEF

4. The Debtor is a debtor and debtor-in-possession pursuant to 11 U.S.C. §1107 and 1108. This Court has jurisdiction over the Debtor pursuant to 28 U.S.C. §§157 and 1334. Venue is proper pursuant to 28 U.S.C. §1408.

## BACKGROUND

5. This case was commenced by the filing of a Chapter 11 petition on November 18, 2024 (the "Filing Date").

6. The Debtor is a corporation organized under the laws of the State of New York and maintains its principal place of business at 10 Skyward Drive, Saratoga Springs, New York, 12866. The Debtor continues to operate as a debtor and debtor in possession pursuant to 11 U.S.C. §1107 and §1108 of the Code.

7.     The Debtor is a container and packaging supplier, consultant, and designer, specializing in plastic bottles, glass bottles, plastic jars, glass jars, metal containers, and closures. The Debtor's business experienced significant and rapid growth through 2019, operating out of state-of-the-art facilities in Saratoga Springs, New York and Reno, Nevada.  As of 2019, annual revenues totaled $44.79 million.  The supply chain disruptions following the COVID-19 pandemic severely constrained the Debtor's inventory availability, resulting in progressive reductions in sales and revenue.   Revenue had fallen to $17.1 million in 2022, $ 10.33 million in 2023, and is expected to have fallen to $5.6 million in 2024.

8.     In order to help alleviate financial pressures, in 2023, the Debtor completed a sale-leaseback transaction with GMES whereby GMES purchased and leased the Saratoga facility back to SKS.  The sale proceeds were used to pay off SKS's existing mortgage loan on the facility, funded future rents to GMES, and provided SKS with working capital.  Unfortunately, the proceeds of the sale-leaseback were not adequate to allow SKS to reverse its downward trend.

9.     On or about June 24, 2024, GMES made a $842,000 loan to the Debtor, $44,205.00 of which was held by GMES to fund an interest reserve to cover loan interest through December 31, 2024 (the "Loan").  The Loan is secured by a perfected first position security interest on all of the Debtor's business assets, including accounts, equipment, fixtures, inventory and the proceeds and replacements thereof.   As of the Filing Date, the outstanding principal balance of the Loan is $842,000.00

10.    The Debtor's filing was precipitated by, among other things, the commencement of eviction proceeding by GMES to dispossess the Debtor of possession of its principal place of business.

**RELIEF REQUESTED**

11. The Debtor seeks to use cash existing on or after the Petition Date that may be part of the GMES's Collateral (the "Cash Collateral"). The Debtor hereby requests that the Court grant the following relief:

  a. authorize the Debtor, pursuant to section 363(c) of the Bankruptcy Code, to use Cash Collateral in accordance with the Budget attached to the proposed Interim Order and such additional budgets as may be agreed to from time to time by the Debtor and GMES or approved by the Court (collectively, the "Budget");

  b. determine that GMES is adequately protected by way of the Debtor's proposal for GMES to continue to receive ongoing interest payments directly from the interest reserve which it has been maintaining as set forth in the Interim Order and by virtue of its position as an over secured creditor;

  c. grant GMES replacement liens in all of the Debtor's pre-petition and post-petition assets; and

  d. schedule a final hearing on the Debtor's continued use of Cash Collateral during the pendency of this bankruptcy case.

**BASIS FOR RELIEF**

*A. THE DEBTOR'S USE OF CASH COLLATERAL IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM*

12. In order to maintain its business operations, the Debtor must be permitted to use cash which is completely encumbered by GMES's security interest. If the Debtor does not obtain authority from the Court pursuant to Section 363(c)(3) to use this Cash Collateral, the Debtor will not be able to continue to operate its business and pay ongoing, necessary post-petition expenses.

As a result, the Debtor will suffer irreparable harm because it will be forced cease operating and will be unable to preserve the value of its estate for the benefit of creditors.

B.  GMES IS ADEQUATELY PROTECTED

13. Pursuant to Section 363(c)(2) of the Bankruptcy Code, a debtor-in-possession may not use cash collateral without the consent of the secured party or approval by the Court. By obtaining approval to use cash collateral, a debtor can continue to operate its business and maintain and enhance the value of its lenders' collateral. *See, e.g., In re Megan Racine Associates Inc.*, 202 B.R. 660, 663 (Bankr. N.D.N.Y. 1996); *In re Constable Plaza Assocs., L.P.,* 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991). Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property used or proposed to be used by the debtor, the court shall prohibit or condition such use as is necessary to provide "adequate protection" of that interest. 11 U.S.C. § 363(e); s*ee Zink v. Vanmiddlesworth*, 300 B.R. 394, 402-03 (N.D.N.Y. 2003) (burden is on creditor to show collateral value decline in order to justify provision of adequate protection or additional adequate protection)

14. What constitutes "adequate protection" must be decided on a case-by-case basis. *See In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985). The adequate protection requirement is meant to prevent the diminution in the value of the secured creditors' interests in their collateral during the reorganization process. *See Megan Racine*, 202 B.R. at 663 (citing *In re Gallegos Research Group Corp.*, 193 B.R. 577, 584 (Bankr. D. Colo. 1995)); *In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990) (permitting bank to receive adequate protection only where value of lender's entire property interest, not just its interest in the cash sought to be used, is declining); *In re Beker Indus. Corp.*,

Case 24-11283-1-rel    Doc 6    Filed 11/18/24    Entered 11/18/24 17:07:01    Desc Main
Document      Page 6 of 8

58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (focus is on protection of the secured creditor from diminution in value of its collateral during reorganization process).

15.     Here, pursuant to the terms of the Loan, GMES maintains an interest reserve to pay the interest due on the Loan through December 31, 2024. As part of this Motion, the Debtor seeks authority for GMES to continue to receive ongoing interest payments directly from its interest reserve account. After the interest reserve is exhausted, the Debtor proposes to make ongoing monthly adequate protection payments of $3,500.00 per month (5% per annum).

16.     As of the commencement of this case, and as reflected in the Debtor's bankruptcy schedules, the Debtor has $48,000.00 in cash in banks, accounts receivable of $103,500.00 and inventory of $1,272,000.00. These assets total $1,423,500. In addition, GMES's security interest covers not only the Cash Collateral, but the rest of the Debtor's assets, including the Debtor's equipment, and racking systems, raw materials, and other business assets listed in the schedules, all totaling in excess of another $2,300,000.00. Since the value of the collateral far exceeds the Loan balance, the Court should determine that GMES is adequately protected and permit the Debtor to use Cash Collateral in accordance with the Interim Order and Budget.

17.     In addition, and as further protection for GMES, the Debtor proposes that GMES be provided replacement liens to the extent of any diminution in the value of its Cash Collateral and non-cash collateral, in all of the Debtor's pre-petition and post-petition assets of every kind, nature, and description, tangible and intangible, now existing or hereafter arising, including, but not limited to, all contracts, all accounts, inventory, equipment, general intangibles, goods, motor vehicles, real estate, and leasehold interests, as well as all products and proceeds thereof. The post-petition grant of the foregoing security interests shall be supplemental to and in addition to, the security interests which GMES possesses pursuant to its loan documents.

## C. INTERIM RELIEF PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(b)(2) IS NECESSARY

18. Pursuant to Federal Rule of Bankruptcy Procedure 4001(b)(2), "The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion." However, the Court may conduct a hearing prior to the expiration of 14 days if the motion so requests and the Court "may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." *Id.*

19. By this Motion and the accompanying Application to Shorten Time, the Debtor requests that the Court hold an interim hearing at its earliest convenience. Pending any further and final hearings, the Debtor requests authority to use Cash Collateral as part of its ongoing business operations in accordance with the Budget. Without authority to use Cash Collateral, the Debtor will suffer irreparable harm and will not be able to preserve the value of its estate for the benefit of creditors.

## NOTICE

20. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel to GMES; and (iii) the creditors holding the 20 largest unsecured claims against the Debtor's estate. The Debtor submits that no other or further notice need be provided.

## NO PRIOR REQUEST

21. No prior motion for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests an Order of this Court authorizing Debtor to immediately use cash collateral through the date of the final hearing, as set forth in the accompanying Interim Order and Budget.

**Dated:**   Albany, New York
             November 18, 2024                              **NOLAN HELLER KAUFFMAN LLP**

                                                            By:   /s/Justin Heller
                                                                  Justin A. Heller, Esq.
                                                                  Matthew M. Zapala, Esq.
                                                                  *Proposed Attorneys for SKS Bottle*
                                                                  *and Packaging, Inc.*
                                                                  80 State Street, 11th Floor
                                                                  Albany, New York 12207