UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| In re | |
|---|---|
| SKS Bottle and Packaging, Inc., | Chapter 11<br>Case No. 24-11283 |
| Debtor. | |

**MOTION PURSUANT TO 11 U.S.C. §105(a) AND 363(b) FOR AN ORDER AUTHORIZING (A) PAYMENT OF WAGES, COMPENSATION AND EMPLOYEE BENEFITS, (B) MAINTAIN EXISTING PAYROLL SERVICE, (C) DIRECTING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CERTAIN CHECKS AND TRANSFERS**

**SKS BOTTLE AND PACKAGING, INC.,** (the "Debtor"), by its counsel, Nolan Heller Kauffman LLP, respectfully represents as follows:

## BACKGROUND

1. This case was commenced by the filing of a Chapter 11 petition on November 18, 2024 (the "Filing Date").

2. The Debtor is a corporation organized under the laws of the State of New York and maintains its principal place of business at 10 Skyward Drive, Saratoga Springs, New York, 12866. The Debtor continues to operate as a debtor and debtor in possession pursuant to 11 U.S.C. §1107 and §1108 of the Code.

3. The Debtor is a container and packaging supplier, consultant, and designer, specializing in plastic bottles, glass bottles, plastic jars, glass jars, metal containers, and closures. The Debtor's business experienced significant and rapid growth through 2019, operating out of state-of-the-art facilities in Saratoga Springs, New York and Reno, Nevada. As of 2019, annual revenues totaled $44.79 million. The supply chain disruptions following the COVID-19 pandemic

severely constrained the Debtor's inventory availability, resulting in progressive reductions in sales and revenue.  Revenue had fallen to $17.1 million in 2022, $ 10.33 million in 2023, and is expected to have fallen to $5.6 million in 2024.

4.	In order to help alleviate financial pressures, in 2023, the Debtor completed a sale-leaseback transaction with GMES whereby GMES purchased and leased the Saratoga facility back to SKS.  The sale proceeds were used to pay off SKS's existing mortgage loan on the facility, funded future rents to GMES, and provided SKS with working capital.  Unfortunately, the proceeds of the sale-leaseback were not adequate to allow SKS to reverse its downward trend.

5.	The Debtor's filing was precipitated by, among other things, the commencement of eviction proceeding by GMES to dispossess the Debtor of possession of its principal place of business.

## JURISDICTION AND VENUE

6.	The Debtor is a debtor and debtor-in-possession pursuant to 11 U.S.C. §1107 and 1108.  This Court has jurisdiction over the Debtor pursuant to 28 U.S.C. §§157 and 1334.  Venue is proper pursuant to 28 U.S.C. §1408.

## RELIEF REQUESTED

I.	**REQUEST FOR AN ORDER AUTHORIZING PAYMENT OF WAGES, COMPENSATION AND EMPLOYEE BENEFITS:**

7.	 In the ordinary course of its business, the Debtor incurs payroll and various other obligations to its employees for the performance of services.  The Debtor currently employs 21 employees ("Employees"), consisting of 10 salaried employees and 11 employees who are compensated on an hourly basis.  The Debtor contracts with ADP TotalSource ("ADP") to process payroll.

8.      Pursuant to this motion, the Debtor requests authority to pay certain obligations to the Employees, as described below.

9.      The Debtor has incurred costs and obligations with respect to the Employees that remain unpaid as of the Filing Date because they accrued, either in whole or in part, prior to the Filing Date.  The Debtor pays its payroll in arrears on both a weekly and bi-weekly basis.  The Debtor currently owes its Employees for work performed during the period from November 3, 2024 and November 15, 2024, which is payable on November 22, 2024.  In addition, the Debtor has incurred pre-petition payroll expenses for its Employees, including withholdings, benefits and employer taxes due for the respective pay periods and which are payable subsequent to the filing of the Debtor's petition.

10.     The Debtor's gross payroll obligation for all of its Employees varies by week and alternates between approximately $10,000 to $12,000 (for employees paid on a weekly basis) and $51,000 to $54,000 (for salaried employees paid on a bi-weekly basis).  The pay period ending November 22, 2024 will include bi-weekly pay for salaried employees for pre-petition services.  These amounts include benefits, taxes, other withholdings, and fees for ADP.

11.     The Debtor also maintains certain benefit programs for employees, including health insurance, life and long-term disability insurance, and a 401k profit sharing program.

12.     The Debtor requests that the Court authorize, but not require, it to pay, in its sole discretion, all obligations (whether pre- or post-petition) with respect to all Employees' wages, salaries and compensation, payroll tax obligations, benefits, and all costs incident to all of the foregoing (collectively, the "Payroll Obligations"), and to continue to honor its pre-petition practices, programs, and policies with respect to its Employees as such practices, programs and policies were in effect as of the Filing Date.

13. Pursuant to § 507(a)(4) and (5) of the Bankruptcy Code, the claims of a debtor's employees for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within the 180 days before the Filing Date, and claims against a debtor for contributions to employee benefit plans arising from services rendered within the 180 days before the Filing Date, are afforded priority status to the extent of $15,150.00 per employee.

14. Furthermore, §363(b)(1) of the Bankruptcy Code provides as follows:

> The trustee, after notice and a hearing, may use, sell, or leased, other than in the ordinary course of business, property of the estate.

15. The relevant provision of section 105(a) of the Bankruptcy Code provides as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

16. The Debtor believes that all of its Payroll Obligations relating to the period prior to the Filing Date constitute priority claims and that payment of such amounts at this time is necessary and appropriate.

17. With the exception of the pre-petition pay period and the pay period that straddles the filing date (creating both pre-and post-petition wage claims for that period) described above, the Debtor is current on its payroll to its Employees. No single Employee is owed wages or benefits in excess of the amount afforded priority under the Bankruptcy Code. The Debtor further submits that, in the unlikely event that any Employee is owed in excess of $15,150.00 on account of pre-petition Payroll Obligations, payment of such amount is necessary and appropriate and is authorized under §105(a) of the Bankruptcy Code pursuant to the "necessity of payment" doctrine, which "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the

debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *Michigan Bureau of Workers Disability Compensation v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987), *appeal dismissed*, 838 F.2d 59 (2d Cir. 1988). This doctrine is consistent with the paramount goal of Chapter 11 of "facilitating the continued operation and rehabilitation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176.

18. The Debtor's Employees are essential to the continued operation of its business and the Debtor's successful reorganization, and employee morale directly affects their effectiveness and productivity. The Debtor relies heavily on its Employers in all facets of its business. Absent authority to pay its Employees, the Debtor will not be able to carry on its business.

19. Consequently, it is critical that the Debtor be authorized to pay its pre-petition Payroll Obligations in the ordinary course of its business. If the checks issued and electronic fund transfers requested in payment of any Payroll Obligations have been or are dishonored, or if such obligations are not timely paid post-petition, the Debtor's Employees will suffer personal hardship and may be unable to pay their daily living expenses. These circumstances undoubtedly will adversely affect their performance and similarly adversely impact the Debtor's reorganization effort to the detriment of all parties in interest.

20. Numerous bankruptcy courts have approved payment of pre-petition claims for compensation, benefits and expense reimbursements similar to those described herein on the grounds that the payment of such claims was necessary to effectuate a successful reorganization.

21. With respect to the payroll taxes in particular, the payment of such taxes will not prejudice other unsecured creditors of the Debtor's estate, as the relevant taxing authorities would hold priority claims under §507(a)(8) of the Bankruptcy Code in respect of such obligations.

Moreover, the monies payable for trust fund taxes generally are not property of a debtor's estate. *See Begier v. Internal Revenue Serv.,* 496 U.S. 53, 59 (1990).

22. Accordingly, pursuant to §§105(a) and 363(b) of the Bankruptcy Code, the Debtor seeks authority to pay all Payroll Obligations as they become due and to continue at this time its practices, programs and policies with respect to its Employees, as such practices, programs and policies were in effect as of the Filing Date.

## II. REQUEST FOR AN ORDER AUTHORIZING DEBTOR TO MAINTAIN EXISTING PAYROLL SERVICE

23. In the ordinary course of its business, the Debtor utilizes ADP (the "Payroll Service") to maintain its payroll service for payment of wages to its employees, as well as payment of employer payroll taxes and employee withholding for income, Social Security and federal unemployment taxes, and employee benefits.

24. It is respectfully submitted that it is in the best interests of the Debtor, its estate, its employees and the taxing authorities for entry of an order permitting the Debtor to maintain its existing payroll service. The Debtor's post-petition obligations include remaining current with respect to its payroll obligations to employees and payment of post-petition taxes as they accrue. The Payroll Service is familiar with the Debtor's payroll system and obligations and its continued involvement will ensure that the Debtor's post-petition payroll obligations continue to be met.

25. It is further respectfully submitted that the fees charged by the Payroll Service are reasonable and ordinary expenses incurred in the ordinary course of the Debtor's business. Accordingly, it is respectfully requested that the Court include in its order on the within motion authority for the Debtor to pay, but not a direction to pay, those fees and expenses incurred to the Payroll Service in the ordinary course of the Debtor's business and without the need for further order from this Court.

**III.    REQUEST FOR AN ORDER AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CERTAIN CHECKS AND TRANSFERS:**

26.   Consistent with the foregoing, the Debtor requests an order authorizing and directing the financial institutions where the Debtor maintains bank accounts to honor and pay all checks in payment of pre-petition Payroll Obligations and all post-petition checks designated as Debtor-in-Possession checks.

27.   As a result of the commencement of the Chapter 11 case, and in the absence of an order of the Court providing otherwise, the Debtor's checks, wire transfers and direct deposit transfers in respect of the Payroll Obligations may be dishonored or rejected by the Debtor's financial institutions.

28.   The Debtor represents that funds for each of these checks or transfers is or will be drawn on the Debtor's bank account and can be readily identified as relating directly to payment of the Payroll Obligations transferred to the Debtor's payroll service.

29.   Authorization of the payment of the Payroll Obligations is not intended by the Debtor to constitute post-petition assumption or adoption of any policy, plan, program or employment agreement pursuant to §365 of the Bankruptcy Code.

## Notice

30.   Notice of this Motion will be provided to: the Office of the United States Trustee for the Northern District of New York; counsel for GMES; the Debtor's twenty (20) largest unsecured creditors; and all parties that have filed a notice of appearance or requested service in this Chapter 11 case. In light of the nature of the relief requested herein and the potential harm to the Debtor's estate if the relief requested herein is not granted, the Debtor respectfully submits that no other or further notice need be provided.

**WHEREFORE,** the Debtor respectfully prays for the entry of an Order consistent with the foregoing, and granting such other and further relief as may be just and proper.

**Dated:** Albany, New York
November 18, 2024

**NOLAN HELLER KAUFFMAN LLP**

By: /s/Justin Heller
Justin A. Heller, Esq.
Matthew M. Zapala, Esq.
*Proposed Attorneys for SKS Bottle and Packaging, Inc.*
80 State Street, 11th Floor
Albany, New York 12207
Phone: (518) 449-3300

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re

SKS Bottle and Packaging, Inc.,

Debtor.

Chapter 11
Case No. 24-1____

**ORDER GRANTING MOTION PURSUANT TO 11 U.S.C. §105(a) AND 363(b) FOR AN ORDER AUTHORIZING (A) PAYMENT OF WAGES, COMPENSATION AND EMPLOYEE BENEFITS, (B) MAINTAIN EXISTING PAYROLL SERVICE, (C) DIRECTING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CERTAIN CHECKS AND TRANSFERS; AND (D) DEBTOR TO MAINTAIN EXISTING BUSINESS FORMS**

**UPON** the motion of the above-named Debtor and Debtor-in-Possession, ("Debtor") praying for and order pursuant for 11 U.S.C. §105(a) and 363(b) authorizing (A) payment of wages, compensation and employee benefits, (B) maintain existing payroll service, and (C) authorizing financial institutions to honor and process certain checks and transfers; and

**UPON** the Court having considered the Debtor's application and having determined that the requested relief is necessary for the maintenance of the Debtor's on-going operations and is beneficial to the administration of the Debtor's estate; it is hereby

**IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED**. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2. The Debtor is authorized, and to the extent required by law, directed to honor and pay, in the ordinary course of business, in accordance with the Debtor's prepetition policies and practices and in the Debtor's sole discretion, prepetition amounts outstanding on Payroll Obligations. Payment of these Payroll Obligations shall offset any priority claims pursuant to 11 U.S.C. § 507(a)(4) and (5) filed by any employees.

3. All applicable banks and other financial institutions are authorized to receive, process, honor, and pay any and all checks or fund transfer requests evidencing amounts paid by the Debtor under this Order or any other order of this Court whether presented prior to or after the Filing Date to the extent the Debtor has good funds standing to their credit with such bank or other financial institution. Such banks and financial institutions are authorized to rely on the representations of the Debtor as to which checks or fund transfers are issued or authorized to be paid pursuant to this Order without any duty of further inquiry and without liability for following the Debtor's instructions.

4. Notwithstanding the relief granted herein and any actions taken hereunder, nothing in this Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim against the Debtor, the creation of an administrative priority claim on account of the Payroll Obligations or the assumption or adoption of any contract or agreement under § 365 of the Bankruptcy Code.

5. The Debtor is authorized to maintain its existing Payroll Service.

6. Pursuant to Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7. The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

###