So Ordered.

Signed this 26 day of February, 2025.



_____
Robert E. Littlefield, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | |
| | Chapter 11 |
| SKS Bottle and Packaging, Inc., | Case No. 24-11283 |
| Debtor. | |

**ORDER: (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE PROPOSED SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (II) SCHEDULING AN AUCTION AND HEARING TO CONSIDER AND APPROVE THE SALE, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (IV) APPROVING THE STALKING HORSE APA**

Upon consideration of the motion (the "Motion") [Docket No. 43] filed by SKS Bottle and Packaging, Inc., the above-captioned debtor and debtor in possession ("SKS" or, the "Debtor"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), as supplemented by Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (this "Bidding Procedures Order"): (i) approving bidding procedures in connection with the sale of substantially all of the Debtor's assets; (ii) scheduling an auction and a hearing to consider the sale; (iii) approving the form and manner of notice thereof; (iv) approving the terms of the Stalking Horse APA and the proposed Bid Protection Amount; and (v) granting related relief; the Court having determined that the relief provided herein is in the best interests of the Debtor, its estate,

creditors, and other parties in interest; and due and adequate notice of the Motion having been

given under the circumstances; and upon the record of the hearings on the Motion held on February

25, 2025, and the full record of this case; and after due deliberation thereon; and good and sufficient

cause appearing therefor, it is hereby:

**FOUND AND DETERMINED THAT:**

A.  This Court has jurisdiction over the Motion and the transactions contemplated therein

pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28

U.S.C. § 157(b)(2)(A), (M) and (O). Venue in this district is proper under 28 U.S.C. §§

1408 and 1409.

B.  Good and sufficient notice of the Motion and the relief sought therein has been given under

the circumstances, and no other or further notice is required except as set forth herein with

respect to the Auction and Sale Hearing. A reasonable opportunity to object or be heard

regarding the relief provided herein has been afforded to parties-in-interest.

C.  The Debtor's proposed notice of the Bidding Procedures is appropriate and reasonably

calculated to provide all interested parties with timely and proper notice of the Auction (as

defined in the Bidding Procedures), the sale of the Acquired Assets, and the Bidding

Procedures to be employed in connection therewith.

D.  The Debtor has articulated good and sufficient business reasons for this Court to approve

the Bidding Procedures, including: (i) the scheduling of a Bid Deadline, Auction and Sale

Hearing for the sale of the Acquired Assets; and (ii) the establishment of procedures to fix

the Cure Amounts to be paid under section 365 of the Bankruptcy Code in connection with

any assumption, assignment and/or transfer of the Executory Contracts and Unexpired

Leases.

E.  The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Acquired Assets.

F.  The entry of this Bidding Procedures Order is in the best interests of the Debtor, its estate, creditors, and other parties-in-interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.  The Motion is granted as set forth herein.

2.  Except as expressly preserved herein, all objections to the approval of the Bidding Procedures and other relief provided herein that have not been withdrawn, waived or settled, hereby are overruled and denied on the merits.

3.  The Bidding Procedures, in substantially the form attached hereto as Schedule 1, are hereby incorporated herein and approved, and shall apply with respect to the sale of the Acquired Assets. The Debtor is authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

4.  As further described in the Bidding Procedures, the deadline for submitting bids for the Acquired Assets (the "Bid Deadline") is March 5, 2025 at 12:00 noon (prevailing Eastern time). No bid shall be deemed to be a Qualified Bid (as defined in the Bidding Procedures) or otherwise considered for any purpose unless such bid meets the requirements set forth in the Bidding Procedures.

5.  The Debtor may sell the Acquired Assets by conducting an Auction in accordance with the Bidding Procedures. If the Debtor receives two or more competing Qualified Bids for any of the Acquired Assets by the Bid Deadline, the Auction shall take place at 10:00 a.m. (prevailing Eastern time) on March 10, 2025 at the offices of Whiteman Osterman & Hanna LLP, 80 State Street, 11th Floor, Albany, New York, 12207, or at such other place and time

as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids. If, however, no such competing Qualified Bids are received by the Bid Deadline, then the Auction will not be held, the Stalking Horse Purchaser shall be deemed the Successful Bidder.

6. Only Qualified Bidders who have submitted a Qualified Bid and their authorized representatives will be eligible to attend and participate at the Auction. Notwithstanding the foregoing, a representative from the Office of the United States Trustee may also attend the Auction. Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale. Qualified Bidders and their counsel wishing to participate in the Auction via audio or video conference technology may make arrangements to do so by contacting counsel for the Debtor no later than the Bid Deadline.

7. The Sale Hearing shall be held before this Court on March 12, 2025 at 10:30 a.m. (prevailing Eastern time), or as soon thereafter as counsel and interested parties may be heard.

8. On or before February 27, 2025, or as soon thereafter as such parties can be identified, the Debtor shall cause (i) a notice in substantially the form attached hereto as Schedule 2 (the "Notice of Auction and Sale Hearing"); and (ii) a copy of the Bidding Procedures Order to be sent by first-class mail postage prepaid, to the following: (a) counsel to GMES, Harris Beach Murtha, 677 Broadway, Suite 1101, Albany, New York, 12207, Attn: Jeremy Speich, Esq. and Brian Roy, Esq.; (b) the Office of the United States Trustee for the Northern District of New York, 11A Clinton Avenue, Room 620. Albany, NY 12207, Attn: Harrison Strauss, Esq.; (c) counsel for the Stalking Horse Purchaser, Hahn Loeser & Parks LLP, 200

Public Square, Suite 2800, Cleveland, Ohio  44114, Attn:  John Paul Lucci, Esq. (jlucci@hahnlaw.com); (d) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (e) all persons known or reasonably believed to have asserted any lien, claim, encumbrance, right of first refusal, or other Interest in or upon any of the Acquired Assets; (f) the non-debtor parties to the Debtor's known Executory Contracts and Unexpired Leases and any parties who are known to claim interests therein; and (g) all persons known or reasonably believed to have expressed an interest in acquiring some or all of the Acquired Assets within the last six months.

9.  On or before February 27, 2025, the Debtor shall (a) serve the Notice of Auction and Sale Hearing on all known creditors of the Debtor and all other parties in interest entitled to receive notice pursuant to Bankruptcy Rule 2002(a)(2).

10. On or before February 27, 2025, the Debtor shall serve by first class mail or hand delivery, a notice of potential assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases (substantially in the form attached hereto as Schedule 3 the "Notice of Assumption and  Assignment") on all non-debtor parties to the Debtor's known Executory Contracts and Unexpired Leases. The Notice of Assumption and Assignment shall identify the calculation of the cure amounts that the Debtor believes must be paid to cure all prepetition defaults under the Executory Contracts and Unexpired Leases (the "Cure Amounts"). In addition, if the Debtor identifies additional executory contracts or unexpired leases that might be assumed by the Debtor and assigned to the Successful Bidder which are not set forth in the original Notice of Assumption and Assignment, the Debtor shall promptly send a supplemental notice (a "Supplemental Notice of Assumption and

Assignment") to the applicable counterparties to such additional executory contracts and unexpired leases.

11. Unless a non-debtor party to an Executory Contract or Unexpired Lease files an objection (the "Cure Amount/Assignment Objection") to (a) their scheduled Cure Amount and/or (b) to the proposed assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease by the later of (i) 4:00 p.m. (prevailing Eastern time) on March 4, 2025, or (ii) solely with respect to any Executory Contract or Unexpired Lease which is the subject of a Supplemental Notice of Assumption and Assignment, five (5) days after service of the relevant Supplemental Notice of Assumption and Assignment (such later date, the "Cure/Assignment Objection Deadline") and serves a copy of the Cure Amount/Assignment Objection so as to be received no later than the Cure/Assignment Objection Deadline by: (i) counsel to the Debtor, Whiteman Osterman & Hanna LLP, 80 State Street, 11th Floor, Albany, New York, 12207, Attn: Justin A. Heller, Esq. and Matthew M. Zapala, Esq.; (ii) counsel to GMES, Harris Beach Murtha, 677 Broadway, Suite 1101, Albany, New York, 12207, Attn: Jeremy Speich, Esq. and Brian Roy, Esq.; (iii) the Office of the United States Trustee for the Northern District of New York, 11A Clinton Avenue, Room 620. Albany, NY 12207, Attn: Harrison Strauss, Esq.; and (iv) counsel for the Stalking Horse Purchaser, Hahn Loeser & Parks LLP, 200 Public Square, Suite 2800, Cleveland, Ohio 44114, Attn: John Paul Lucci, Esq. (jlucci@hahnlaw.com), then such non-debtor party (A) will be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contract and Unexpired Lease and the Debtor shall be entitled to rely solely upon the Cure Amount, and (B) if the Executory Contract or Unexpired Lease is identified as an Purchased Asset to be

acquired by the Successful Bidder(s) and/or Back-Up Bidder(s), the non-debtor party shall be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease and shall be forever barred and estopped from asserting or claiming against the Debtor, the Successful Bidder(s) and/or Back-Up Bidder(s) or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or that conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract or Unexpired Lease. Notwithstanding the foregoing, as provided below, each non-debtor party shall retain the right to object to the assumption, assignment or transfer of its Executory Contract or Unexpired Lease, based solely on the issue of whether the Successful Bidder(s) and/or Back-Up Bidder(s) can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

12. If an objection challenges a Cure Amount, the objection must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof. Upon receipt of a Cure Amount/Assignment Objection, the Debtor shall be authorized, but not directed, to resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease and any Successful Bidder without further order of the Court. In the event that the Debtor and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection prior to the Sale Hearing, the Court will resolve any such Cure Amount/Assignment Objection at the Sale Hearing.

13. The Debtor, the Successful Bidder(s) or the Back-Up Bidder(s), as the case may be, are authorized, subject to the terms of the Successful Bid(s) or the Back-Up Bid(s), to exclude

any Executory Contract or Unexpired Lease from the list of Acquired Assets to be sold (i) no later than the closing of the sale of the Acquired Assets, or, (ii) if the Court determines at any hearing on a Cure Amount/Assignment Objection that the applicable cure amount for such contract is greater than the Cure Amount proposed by the Debtor, no later than five (5) business days following the date of such determination. The non-debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

14. As soon as practicable after the conclusion of the Auction for the Acquired Assets, the Debtor will file on the Court's docket a notice identifying the Successful Bidder(s) and Back-Up Bidder(s) and the Executory Contracts and Unexpired Leases that have been identified in such Successful Bid(s) and Back-Up Bid(s) and shall serve such notice on non- debtor parties to the Executory Contracts and Unexpired Leases by email. The non-debtor parties to the Executory Contracts and Unexpired Leases shall have until 10:00 a.m. on the day of the Sale Hearing (the "Adequate Assurance Objection Deadline") to object to the assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease solely on the issue of whether any Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

15. The terms of the Stalking Horse APA are approved, subject to the receipt of higher or better bids pursuant to these Bidding Procedures and the entry of the Sale Order.  Further, the Bankruptcy Court Matters provisions of Section 6.6 of the Stalking Horse APA are approved, except that the Bid Protection Amount shall be $100,000.00 and the Initial

Minimum Overbid shall exceed the Purchase Price (as defined in the Stalking Horse APA) by $150,000.00.

16. Objections to the sale of the Acquired Assets, or the balance of the relief requested in the Motion but not granted in this Bidding Procedures Order must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the United States Bankruptcy Court for the Northern District of New York, on or before 4:00 p.m. (prevailing Eastern time) seven (7) days prior to the Sale Hearing, or such later date and time (prior to the Sale Hearing) as the Debtor may agree; and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern time) on the same day, upon (i) counsel to the Debtor, Whiteman Osterman & Hanna LLP, 80 State Street, 11th Floor, Albany, New York, 12207, Attn: Justin A. Heller, Esq. and Matthew M. Zapala, Esq.; (ii) counsel to GMES, Harris Beach Murtha, 677 Broadway, Suite 1101, Albany, New York, 12207, Attn: Jeremy Speich, Esq. and Brian Roy, Esq.; (iii) the Office of the United States Trustee for the Northern District of New York, 11A Clinton Avenue, Room 620. Albany, NY 12207, Attn: Harrison Strauss, Esq.; and (iv) counsel for the Stalking Horse Purchaser, Hahn Loeser & Parks LLP, 200 Public Square, Suite 2800, Cleveland, Ohio 44114, Attn: John Paul Lucci, Esq. (jlucci@hahnlaw.com) All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

17. The Notice of Auction and Sale Hearing and the Notice of Assumption, and Assignment to be issued in connection with the proposed sale of the Acquired Assets, substantially in the forms annexed hereto as Schedule 2 and Schedule 3, respectively, are approved. The proposed manner of service of the Notice of Auction and Sale Hearing and the Notice of Assumption and Assignment are approved.

18. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest other than by announcement of said adjournment before this Court or on this Court's calendar on the date scheduled for said hearing.

19. Except as otherwise provided in this Bidding Procedures Order, the Debtor shall have the right as it may reasonably determine to be in the best interests of its estate, to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any bid that the Debtor deems to be (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtor and its estate; (e) remove some of the Acquired Assets from the Auction; (f) waive terms and conditions set forth in the Bidding Procedures with respect to all Bidders; (g) impose additional terms and conditions with respect to all Bidders; (h) extend the deadlines set forth herein; (i) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (j) modify the Bidding Procedures as the Debtor may determine to be in the best interests of its estate, or to withdraw the Motion and abandon the sale process at any time with or without prejudice.

20. The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Bidding Procedures Order shall be effective immediately upon its entry.

21. This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

# # #

## SCHEDULE 1

**To Bidding Procedures Order**

**[Bidding Procedures]**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re

SKS Bottle and Packaging, Inc.,                    Chapter 11
                                                    Case No. 24-11283

                              Debtor.

## **BIDDING PROCEDURES**

By motion dated February 12, 2025 (the "Motion"), SKS Bottle and Packaging, Inc., the above-captioned debtor and debtor in possession ("SKS" or, the "Debtor") sought approval of, among other things, the procedures by which the Debtor will determine the highest or otherwise best offer for the sale of substantially all of the Debtor's assets (the "Acquired Assets").

On February __, 2025, the Court entered an order (the "Bidding Procedures Order"), which, among other things, authorized the Debtor to determine the highest or otherwise best offer for the Acquired Assets through the process and procedures set forth below (the "Bidding Procedures"). The Debtor reserves the right to modify the Bidding Procedures, provided that any such modification is not materially inconsistent with the terms of the Bidding Procedures Order.

The sale of the Acquired Assets will be subject to competitive bidding as set forth herein and approval of the Court pursuant to sections 105, 363 and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

### Assets to be Sold

The Acquired Assets to be sold constitute substantially all of the assets of the Debtor.

### Participation Requirements

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in the Acquired Assets (a "Bidder") must first deliver the following materials to the Debtor and its counsel:

i.     an executed confidentiality agreement in form and substance satisfactory to the Debtor and its counsel; and

ii.    the most current audited and latest unaudited financial statements (collectively, the "Financials") of the Bidder, or, if the Bidder is an entity formed for the purpose of a sale transaction, (x) Financials of the equity holder(s) of the Bidder and (y) a written commitment acceptable to the Debtor of the equity holder(s) of the Bidder to be responsible for the Bidder's obligations in connection with a sale transaction (including being bound by the terms and conditions of the Bidding Procedures); which demonstrate to the Debtor's reasonable satisfaction the Bidder's financial ability to consummate a competing sale transaction provided that if a Bidder is unable to provide Financials, the Debtor may in its discretion, but shall have no obligation to, accept such other information as they deem sufficient to establish a Bidder's financial wherewithal.

A Bidder meeting the requirements set forth in this paragraph shall be considered a "Qualified Bidder." Notwithstanding the foregoing, Pipeline Packaging Corporation ("Pipeline" or the "Stalking Horse Purchaser") shall be a Qualified Bidder.

<u>Bid Requirements</u>

The Debtor shall determine whether a bid qualifies as a "Qualified Bid." To constitute a Qualified Bid, a bid (other than the Stalking Horse APA, which shall constitute a Qualified Bid) must be a written irrevocable offer from a Qualified Bidder and meet the following conditions, unless waived by the Debtor:

i.      contain a proposed asset purchase agreement, executed by and binding upon the Bidder, reflecting the terms and conditions of the bid (each, a "Proposed Asset Purchase Agreement").  Such Proposed Asset Purchase Agreement should also:

      a.     contain terms that are substantially similar to, and not materially more burdensome or conditional than, the terms of the Stalking Horse APA (unless the Debtor determines any proposed alternative terms are superior to the terms and conditions of the Agreement), and such Bidder must also include a marked copy of its Proposed Asset Purchase Agreement showing any changes, amendments or modifications to the Stalking Horse APA that are being proposed by the Bidder, as applicable (each, a "Marked Asset Purchase Agreement"); and

      b.    provide that the consideration to be given will exceed the Purchase Price (as defined in the Stalking Horse APA), by at least $150,000.00 (the "Initial Minimum Overbid").

ii.     contain a list of the Debtor's executory contracts and unexpired leases (if any) with respect to which the Bidder seeks assignment from the Debtor, provided, however, if any bid is conditioned on the assumption and assignment of executory contracts and/or unexpired leases, the Bidder shall be required to provide evidence of its ability to provide adequate assurance of future performance of such contracts or leases along with its bid;

iii.    confirm that the Bidder's offer shall remain open and irrevocable as provided below;

iv.    be submitted no later than the Bid Deadline (defined below) and accompanied by a certified or bank check or wire transfer in an amount equal to ten percent (10%) of the proposed purchase price set forth in the Proposed Asset Purchase Agreement as a minimum

good faith deposit (the "Deposit"), which Deposit shall be used to fund a portion of the

purchase price provided for in the bid;

v.    not be conditioned on obtaining financing or the outcome of any due diligence by

the Bidder;

vi.    not request or entitle the Bidder to any break-up fee, expense reimbursement or

similar type of payment; and

vii.    fully disclose the identity of each entity that will be bidding for the Acquired Assets

or otherwise participating in connection with such bid, and the complete terms of any such

participation.

<u>Bid Deadline</u>

The deadline for submitting bids on the Acquired Assets shall be 12:00 noon (prevailing

Eastern time) on March 5, 2025 (the "Bid Deadline").

A Bidder that desires to make a bid for the Acquired Assets must deliver written and

electronic copies of their bid so that they are actually received prior to the Bid Deadline by: (a)

counsel to the Debtor, Whiteman Osterman & Hanna LLP, 80 State Street, 11th Floor, Albany, New

York, 12207, Attn: Justin A. Heller, Esq. and Matthew M. Zapala, Esq.; (b) counsel to GMES,

Harris Beach Murtha, 677 Broadway, Suite 1101, Albany, New York, 12207, Attn: Jeremy Speich,

Esq. and Brian Roy, Esq.; (c) the Office of the United States Trustee for the Northern District of

New York, 11A Clinton Avenue, Room 620. Albany, NY 12207, Attn: Harrison Strauss, Esq.; and

(d) counsel for the Stalking Horse Purchaser, Hahn Loeser & Parks LLP, 200 Public Square, Suite

2800, Cleveland, Ohio 44114, Attn: John Paul Lucci, Esq. (jlucci@hahnlaw.com).

As promptly as practicable after a Bidder delivers a bid, the Debtor shall determine, and

shall notify the Bidder, whether the Bidder is a Qualified Bidder and whether its bid is a Qualified

Bid. The Debtor may modify, employ and announce at the Auction additional or amended procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules (i) are not materially inconsistent with the Bidding Procedures Order and (ii) are disclosed to each Qualified Bidder attending the Auction.

<u>Obtaining Due Diligence Access</u>

The Debtor shall afford each Qualified Bidder reasonable due diligence information. Site access shall be provided upon reasonable request to the Debtor and at the discretion of the Debtor within its reasonable business judgment. The due diligence period will end on the Bid Deadline. The Debtor shall not be obligated to furnish any information relating to the Debtor, the Acquired Assets, and/or the sale to any person except to a Qualified Bidder. The Debtor shall give each Qualified Bidder reasonable access to an online data room containing the written due diligence materials provided to the Stalking Horse Purchaser.

The Debtor shall coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

<u>Due Diligence from Bidders</u>

Each Bidder shall comply with all reasonable requests for additional information by the Debtor or its advisors, including requests for additional information regarding such Bidder's financial wherewithal to consummate and perform obligations in connection with the sale of the Acquired Assets or such other matters as may be subject to reasonable inquiry by the Debtor. Failure by the Bidder to comply with requests for additional information may be a basis for the Debtor to determine that a bid made by the Bidder is not a Qualified Bid.

<u>"As Is, Where Is, With All Faults"</u>

The sale of the Acquired Assets shall be on an "as is, where is, with all faults" basis and without representations or warranties of any kind, nature or description by the Debtor, its agents or estate, except to the extent specifically set forth in the purchase agreement between the Debtor and the Successful Bidder. All of the Debtor's right, title and interest in and to the Acquired Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Interests") except as otherwise set forth in the Successful Bid(s) submitted by the Successful Bidder(s), with such Interests to attach to the net proceeds of the sale of the Acquired Assets, with the same validity and priority as existed immediately prior to such sale.

Each Bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Acquired Assets prior to making its offer, that such Bidder has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that such Bidder did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Acquired Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in the Marked Purchase Agreement (or, with respect to the Stalking Horse Purchaser, the Stalking Horse APA).

<u>The Auction</u>

If the Debtor receives two or more competing Qualified Bids for any of the Acquired Assets prior to the Bid Deadline, an auction (the "Auction") for such assets, as applicable, shall take place at 10:00 a.m. (prevailing Eastern time) on March 10, 2025 at the offices of Whiteman Osterman

& Hanna LLP, 80 State Street, 11th Floor, Albany, New York, 12207, or at such other place and

time as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids. If,

however, no such competing Qualified Bids are received by the Bid Deadline, then the Auction

will not be held, the Stalking Horse Purchaser shall be deemed the Successful Bidder.

<u>Auction Rules:</u>

i.      Only Qualified Bidders who have submitted a Qualified Bid and their authorized

representatives will be eligible to attend and participate in the Auction.  Notwithstanding the

foregoing, a representative from the Office of the United States Trustee may also attend the

Auction.  Each Qualified Bidder participating at the Auction will be required to confirm that it has

not engaged in any collusion with respect to the bidding or the sale.  Qualified Bidders and their

counsel wishing to participate in the Auction via audio or video conference technology may make

arrangements to do so by contacting counsel for the Debtor no later than the Bid Deadline.

ii.     The Debtor may, in its sole discretion, adopt rules for the Auction at any time that

the Debtor reasonably determines to be appropriate to promote a value-maximizing auction,

including, without limitation, conducting one or more sub-auctions for the Acquired Assets in

different subsets or lots.

iii.    At the commencement of the Auction the Debtor shall announce the Qualified Bid

that it has determined represents the highest or otherwise best bid for the Acquired Assets (the

"Starting Qualified Bid"), the overall consideration value ascribed to such bid (the "Bid Value")

and any other distinguishing features which, in the opinion of the Debtor, makes the Starting

Qualified Bid the highest or otherwise best offer for the Acquired Assets.

iv.     Each Qualified Bidder present at the Auction will be permitted to increase its

Qualified Bid (such increased Qualified Bid, a "Qualified Overbid"), provided that such Qualified

Overbid(s) must exceed the Bid Value of the Starting Qualified Bid or, if applicable, the highest or otherwise best Qualified Overbid, by an incremental amount that is not less than an amount to be announced at or before the commencement of any Auction (the "Bidding Increment"). The Debtor reserves the right to determine an appropriate Bidding Increment for each subset or lot of Acquired Assets to be sold at the Auction. Notwithstanding the foregoing, the initial Bidding Increment for any Qualified Bids with respect to the Acquired Assets shall be at least fifty thousand dollars ($50,000.00), however the Debtor, in its business judgment, may select a different Bidding Increment for the Acquired Assets during the Auction.  During the course of the Auction, the Debtor will inform the participants which Qualified Overbid reflects the then-highest or otherwise best offer for the applicable Acquired Assets and the Bid Value ascribed thereto. The Debtor shall not consider any subsequent bid received at the Auction unless the Bid Value of such bid, as determined by the Debtor, exceeds the Bid Value of the Starting Qualified Bid or the then-highest Qualified Overbid by at least the applicable Bidding Increment.

   v.  The Auction may be adjourned as the Debtor deems appropriate. Reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to all Qualified Bidders that have submitted a Qualified Bid.

   vi.  At the conclusion of the Auction, the Debtor shall announce the bid made pursuant to the Bidding Procedures that represents, in the Debtor's judgment, the highest or otherwise best offer for the Acquired Assets (the "Successful Bid") and the Bidder or Bidders submitting such bid (the "Successful Bidder(s)"). The Debtor may also, in its discretion, announce the next-highest or otherwise best offer or offers for any subset of the Acquired Assets (each, a "Back-Up Bid") and the party or parties submitting such bid or bids (the "Back-Up Bidder(s)"). If an Auction is held, the Debtor shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared a

Successful Bid (or a Back-Up Bid) at the Auction, (ii) definitive documentation has been executed in respect thereof, and (iii) the Court has approved the sale to a Successful Bidder (or Back-Up Bidder). Any acceptance by the Debtor is conditioned upon approval by the Court of the Successful Bid(s) (or Back-Up Bid(s)) and the entry of an order approving such Successful Bid(s) (or Back-Up Bid(s)).

Other Terms

All Qualified Bids, the Auction, and the Bidding Procedures are subject to such additional terms and conditions as may be announced by the Debtor from time to time, provided that such additional terms and conditions are not materially inconsistent with the Bidding Procedures Order.

Irrevocability of Certain Bids

Any Successful Bid(s) shall remain irrevocable in accordance with the terms of the Proposed Asset Purchase Agreement submitted by the Successful Bidder(s), as the same may be modified at the Auction. Back-Up Bid(s), as modified at the Auction, shall be irrevocable until the earliest of: (i) 45 days after entry of the Sale Order approving a Successful Bid for the same Acquired Assets; (ii) closing of the sale of the same Acquired Assets to the Successful Bidder; and (iii) such date as the Debtor affirms in writing that the Debtor does not intend to proceed with a sale to the Back-Up Bidder (the "Outside Back-Up Date"). Following the entry of the Sale Order, if a Successful Bidder fails to consummate the purchase of the Acquired Assets subject to its Successful Bid because of a breach or failure to perform on the part of the Successful Bidder, the applicable Back-Up Bid (if any) will be deemed to be the new Successful Bid, and the Debtor will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Court. In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtor and the Debtor shall have the right to seek any and all other remedies and damages

from the defaulting Successful Bidder. For the avoidance of doubt, if the defaulting Successful Bidder is the Stalking Horse Purchaser, the Stalking Horse Purchaser shall not be entitled to the Bid Protection Amount.

The Debtor will present the results of the Auction to the Court at the Sale Hearing (as defined below), at which time certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (i) the Auction was conducted and the Successful Bidder(s) were selected in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure, (iii) the Successful Bidder and any Back-Up Bidders are good faith buyers; and (iv) consummation of the sale contemplated by the Successful Bid(s) will provide the highest or otherwise best value for the Acquired Assets and is in the best interests of the Debtor and its creditors.

<u>Sale Hearing</u>

A hearing to consider approval of the sale of the Acquired Assets to the Successful Bidder (the "Sale Hearing") will be held before the Honorable Robert E. Littlefield, Jr., United States Bankruptcy Judge, or such other judge as may be sitting in his stead at the United States Bankruptcy Court for the Northern District of New York, 445 Broadway, Suite 330, Albany, NY 12207, the hearing may also be accessed telephonically by dialing 518-217-2288; and Conference ID: 939500229#, on March 12, 2025 at 10:30 a.m. (prevailing Eastern time), or at such other time thereafter as counsel may be heard. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

### Return of Deposit

Except as otherwise provided in this paragraph with respect to any Successful Bid and any Back-Up Bid, the Deposits of all Qualified Bidders that submitted such a deposit under the Bidding Procedures shall be returned upon or within three (3) business days after the date on which the Court enters an order approving the sale of the Acquired Assets to the Successful Bidder(s) or otherwise concludes the Sale Hearing without adjournment. The Deposit of the Successful Bidder(s) shall be held until the closing of the sale of the Acquired Assets and applied in accordance with the Successful Bid(s) or returned in accordance with the Successful Bidder's purchase agreement. The Deposit of the Back-Up Bidder(s) shall be returned upon or within five business (5) days after the Outside Back-Up Date.

### Failure to Close

If a Successful Bidder fails to consummate the transaction in accordance with the terms of the purchase agreement executed by the Successful Bidder by the closing date contemplated in the purchase agreement agreed to by the parties for any reason (except in the case of the Stalking Horse Purchaser, in which case the termination provisions in the Stalking Horse APA shall apply to the extent applicable), the Debtor shall: (i) retain the Successful Bidder's Deposit; (ii) maintain the right to pursue all available remedies, whether legal or equitable; and (iii) be free to consummate the proposed transaction with the applicable Back-Up Bidder at the highest price bid by the Back-Up Bidder at the Auction, without the need for an additional hearing or order of the Court.

### Reservation of Rights

Except as otherwise provided in the Bidding Procedures Order, the Debtor reserves the right to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified

Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or best proposal; (iv) reject any bid that the Debtor deems to be (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtor and its estate; (v) remove some of the Acquired Assets from the Auction or offer the Acquired Assets in different subsets or lots; (vi) waive terms and conditions set forth herein with respect to all Bidders; (vii) impose additional terms and conditions with respect to all Bidders; (viii) extend the deadlines set forth herein; (ix) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (x) modify the Bidding Procedures, as the Debtor may determine to be in the best interests of its estate, or to withdraw the Motion and abandon the sale process at any time with or without prejudice.

<u>Expenses</u>

Except to the extent the Stalking Horse Purchaser is entitled to a Bid Protection Amount as approved by the Court, any Bidders presenting bids shall bear their own expenses in connection with the proposed sale of the Acquired Assets, whether or not such sale is ultimately approved.

* * *

## **SCHEDULE 2**

**To Bidding Procedures Order**

**[Notice of Auction and Sale Hearing]**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | |
| | Chapter 11 |
| SKS Bottle and Packaging, Inc., | Case No. 24-11283 |
| Debtor. | |

## <u>NOTICE OF AUCTION AND SALE HEARING</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1.      On February 19, 2025, SKS Industries LLC, the above-captioned debtor and debtor in possession ("SKS" or, the "Debtor") filed a motion (the "Motion") [Docket No. 43] for entry of orders, among other things: (i) approving bidding procedures (the "Bidding Procedures") in connection with the sale of substantially all of the Debtor's assets (the "Acquired Assets"); (ii) scheduling an auction (the "Auction") and a hearing (the "Sale Hearing") to consider and approve the sale of the Acquired Assets and setting objection and bidding deadlines with respect to the sale of the Acquired Assets; (iii) approving the form and manner of notice of the Auction and the Sale Hearing; (iv) approving the terms of the Stalking Horse APA submitted by the Stalking Horse Purchaser (defined below) and the proposed Bid Protection Amount; and (v) granting related relief. The Motion additionally requests entry of an order or orders:

(i) authorizing the sale of the Acquired Assets free and clear of liens, claims, encumbrances, and interests; (ii) authorizing and approving the assumption, assignment and/or transfer of Executory Contracts and Unexpired Leases; and (iii) granting related relief.

2.      The Debtor is seeking to sell the Acquired Assets to Pipeline Packaging Corporation ("Pipeline" or the "Stalking Horse Purchaser"), or to the Successful Bidder(s) or Back-Up

Bidder(s) as determined at the Auction. Approval of the sale of the Acquired Assets may result in, among other things, the assumption, assignment and/or transfer by the Debtor of certain executory contracts and leases. If you are a party to an executory contract or lease with the Debtor, you will receive a separate notice that contains relevant dates and other information that may impact you as a party to an executory contract or lease.

3. On February __, 2025, the United States Bankruptcy Court for the Northern District of New York (the "Court") entered an order approving the Bidding Procedures (the "Bidding Procedures Order"). Pursuant to the Bidding Procedures Order, if the Debtor receives Qualified Bids (as defined in the Bidding Procedures), an Auction for the Acquired Assets will be held on March 10, 2025, at 10:00 a.m. (prevailing Eastern time) at the offices of Whiteman Osterman & Hanna LLP, 80 State Street, 11th Floor, Albany, New York, 12207, or at such other place and time as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids. Only Qualified Bidders who have submitted a Qualified Bid in accordance with the Bidding Procedures, attached to the Bidding Procedures Order as Schedule 1, by no later than March 5, 2025 at 12:00 noon (prevailing Eastern time) (the "Bid Deadline") may participate at the Auction. Any party that wishes to take part in this process and submit a bid for the Acquired Assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.

4. The Sale Hearing to consider approval of the sale of the Acquired Assets free and clear of all liens, claims, encumbrances, and interests will be held before the Honorable Robert E. Littlefield, Jr., U.S. Bankruptcy Judge, or such other judge as may be sitting in his stead at the United States Bankruptcy Court for the Northern District of New York, 445 Broadway, Suite 330, Albany, New York  12207, the hearing may also be accessed telephonically by dialing (518-217-2288; and entering the Conference ID: 939500229#, on March 12, 2025 at 10:30 a.m. (prevailing

Eastern time), or at such other time thereafter as counsel may be heard.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

5.        Objections, if any, to the sale of the Acquired Assets, or the relief requested in the Motion (other than with respect to cure amounts and adequate assurance which are subject to a separate notice) must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Northern District of New York on or before 4:00 p.m. (prevailing Eastern time) on March 5, 2025, or such later date and time (prior to the Sale Hearing) as the Debtor may agree; and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern time) on the same day, upon (i) counsel to the Debtor, Whiteman Osterman & Hanna LLP, 80 State Street, 11th Floor, Albany, New York, 12207, Attn: Justin A. Heller, Esq. and Matthew M. Zapala, Esq.; (ii) counsel to GMES, Harris Beach Murtha, 677 Broadway, Suite 1101, Albany, New York, 12207, Attn: Jeremy Speich, Esq. and Brian Roy, Esq.; (iii) the Office of the United States Trustee for the Northern District of New York, 11A Clinton Avenue, Room 620. Albany, NY 12207, Attn: Harrison Strauss, Esq.; and (iv) counsel for the Stalking Horse Purchaser, Hahn Loeser & Parks LLP, 200 Public Square, Suite 2800, Cleveland, Ohio 44114, Attn: John Paul Lucci, Esq. (jlucci@hahnlaw.com).

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT AND THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER HEARING AND NOTICE.**

6.        This Notice of Auction and Sale Hearing is subject to the fuller terms and conditions of the Motion, the Bidding Procedures Order, and the Bidding Procedures, which shall control in

the event of any conflict and the Debtor encourages all parties-in-interest to review such documents

in their entirety. Parties interested in receiving more information regarding the sale of the Acquired

Assets or to obtain a copy of any of the foregoing documents may make a written request to counsel

to the Debtor, Whiteman Osterman & Hanna LLP, 80 State Street, 11th Floor, Albany, New York,

12207, Attn: Justin A. Heller, Esq. and Matthew M. Zapala, Esq.  In addition, copies of the Motion

and the Bidding Procedures Order (including the Bidding Procedures) can be found on the Court's

electronic case filing (ECF) website, http:// https://ecf.nynb.uscourts.gov, and are on file with the

Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Northern District of New

York, 445 Broadway, Suite 330, Albany, NY  12207.


Dated: February ___, 2025
      Albany, New York           WHITEMAN OSTERMAN & HANNA LLP


                        By: _____
                              Justin A. Heller, Esq. (Bar Roll No. 103632)
                              Matthew M. Zapala, Esq. (Bar Roll No. 519205)
                              80 State Street, 11th Floor
                              Albany, NY 12207
                              Telephone: (518) 487-7600
                              jheller@woh.com
                              mzapala@woh.com

## <u>SCHEDULE 3</u>

**To Bidding Procedures Order**

**[Notice of Assumption, Assignment and/or Transfer]**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | |
| | Chapter 11 |
| SKS Bottle and Packaging, Inc., | Case No. 24-11283 |
| Debtor. | |

**NOTICE OF ASSUMPTION, ASSIGNMENT AND/OR TRANSFER**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.  On February __, 2025, the United States Bankruptcy Court for the Northern District of New York (the "Court") entered an order (the "Bidding Procedures Order"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure in the chapter 11 case (the "Chapter 11 Case") of SKS Bottle and Packaging, Inc., the above-captioned debtor and debtor in possession ("SKS" or, the "Debtor") approving, among other things, the fixing of cure amounts (the "Cure Amounts") related to the Debtor's assumption, assignment and/or transfer of certain executory contracts, unexpired leases, and other agreements listed on Exhibit A annexed hereto (each, an "Executory Contract" or "Unexpired Lease" and collectively the "Executory Contracts and Unexpired Leases") in connection with the proposed sale of substantially all of the Debtor's assets (the "Acquired Assets"). The Debtor may assume, assign, and/or transfer the Executory Contracts and Unexpired Leases to a Successful Bidder or Back-Up Bidder for the Acquired Assets under the bidding procedures (the "Bidding Procedures") approved by the Bankruptcy Court and attached to the Bidding Procedures Order as Schedule 1.

2.  The Debtor believes that any and all defaults (other than defaults arising from the filing of the Chapter 11 Case) and actual pecuniary losses under the Executory Contracts and Unexpired Leases can be cured by the payment of the respective Cure Amounts listed on Exhibit A annexed hereto.

3.  Any objections to (i) the assumption, assignment and/or transfer of an Executory Contract or Unexpired Lease, or (ii) the amount asserted on Exhibit A as the Cure Amount (each, a "Cure Amount/Assignment Objection"), must be in writing and set forth with specificity the nature of the objection and the cure amount that the objecting party believes should be paid in connection with the assumption of its Executory Contract or Unexpired Lease (the "Claimed Cure

Amount"). In addition, if the Debtor identifies additional executory contracts or unexpired leases that might be assumed by the Debtor and assigned to a Successful Bidder or Back-Up.

4.     For contracts that are not set forth in this Notice of Assumption and Assignment, the Debtor shall promptly send a supplemental notice (a "Supplemental Notice of Assumption and Assignment") to the applicable counterparties to such additional executory contracts and unexpired leases.

5.     To be considered a timely Cure Amount/Assignment Objection, the Cure Amount/Assignment Objection must be filed with the Bankruptcy Court and served upon (a) counsel to the Debtor, Whiteman Osterman & Hanna LLP, 80 State Street, 11th Floor, Albany, New York, 12207, Attn: Justin A. Heller, Esq. and Matthew M. Zapala, Esq.; (b) counsel to GMES, Harris Beach Murtha, 677 Broadway, Suite 1101, Albany, New York, 12207, Attn: Jeremy Speich, Esq. and Brian Roy, Esq.; (c) the Office of the United States Trustee for the Northern District of New York, 11A Clinton Avenue, Room 620. Albany, NY 12207, Attn: Harrison Strauss, Esq.; and (d) counsel for the Stalking Horse Purchaser, Hahn Loeser & Parks LLP, 200 Public Square, Suite 2800, Cleveland, Ohio 44114, Attn:  John Paul Lucci, Esq. (jlucci@hahnlaw.com), by the latter of (i) 4:00 p.m. (prevailing Eastern time) on March 4, 2025; or, (ii) solely with respect to any Executory Contract or Unexpired Lease which is the subject of a Supplemental Notice of Assumption and Assignment, five (5) days after service of the relevant Supplemental Notice of Assumption and Assignment.

6.     If a Cure Amount/Assignment Objection is timely filed, the Debtor may, in its sole discretion, resolve any Cure Amount/Assignment Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease without further order of the Court. In the event that the Debtor and any objecting party are unable to consensually resolve any Cure Amount/Assignment Objection, a hearing with respect to that objection shall be held before the Honorable Robert E. Littlefield, Jr., United States Bankruptcy Judge, United States Bankruptcy Court for the Northern District of New York, U445 Broadway, Albany, New York 12207, at 10:30 a.m. (prevailing Eastern time) on March 12, 2025.

7.     Unless a Cure Amount/Assignment Objection is timely filed and served, the assumption, assignment and/or transfer of the applicable Executory Contract or Unexpired Lease may proceed without further notice at the hearing to approve the sale of the Acquired Assets.

8.     All parties who do not file and serve a timely Cure Amount/Assignment Objection shall (i) be deemed to have waived and released any and all rights to assert against the Debtor, the Successful Bidder(s) or Back-Up Bidder(s), cure amounts different from the Cure Amounts listed on Exhibit A hereto, (ii) be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease, and (iii) be forever barred and estopped from asserting or claiming against the Debtor, the Successful Bidder(s) or the Back-Up Bidder(s), or any assignee of such Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or prohibitions or conditions to assignment exist or must be satisfied (other than with respect to the ability of any Successful Bidder(s) or Back-Up Bidder(s) who is not the Stalking Horse Purchaser to provide adequate assurance of future performance as required by

section 365 of the Bankruptcy Code) with respect to such Executory Contract or Unexpired Lease.

9.      The Debtor, the Successful Bidder(s) or the Back-Up Bidder(s), as the case may be, and subject to the terms of the Successful Bid(s) or the Back-Up Bid(s), may determine to exclude any Executory Contract or Unexpired Lease from the list of Acquired Assets to be sold no later than the closing of the sale of the Acquired Assets, or, if the Court determines at any hearing on a Cure Amount/Assignment Objection that the applicable cure amount for such Executory Contract or Unexpired Lease is greater than the Cure Amount proposed by the Debtor, no later than five (5) business days following the date of such determination. The non-debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

10.     If you agree with the Cure Amounts proposed by the Debtor and do not otherwise object to the Debtor's assumption, assignment and/or transfer of your Executory Contract or Unexpired Lease, you need not take any further action.

11.     Copies of the Bidding Procedures Order and other relevant documents can be found on the Court's electronic case filing (ECF) website, https://ecf.nynb.uscourts.gov, and are on file with the Clerk of the Bankruptcy Court, 445 Broadway, Albany, New York 12207.

12.     The Debtor's decision to sell, assign and/or transfer to the Successful Bidder(s) or Back-Up Bidder(s) the Executory Contracts and Unexpired Leases is subject to Court approval and to the closing of the sale of the Acquired Assets (the "Closing"). Accordingly, absent such Closing, none of the Executory Contracts or Unexpired Lease shall be deemed to be sold, assigned and/or transferred, and they shall in all respects be subject to further administration under the Bankruptcy Code. The inclusion of any document on the list of Executory Contracts and Unexpired Leases shall not constitute or be deemed to be a determination or admission that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Dated: February ___, 2025
        Albany, New York                    WHITEMAN OSTERMAN & HANNA LLP


                                    By: _____
                                        Justin A. Heller, Esq. (Bar Roll No. 103632)
                                        Matthew M. Zapala, Esq. (Bar Roll No. 519205)
                                        80 State Street, 11th Floor
                                        Albany, NY 12207
                                        Telephone: (518) 487-7600
                                        jheller@woh.com
                                        mzapala@woh.com