So Ordered.

Signed this 12 day of March, 2025.



_____
Robert E. Littlefield, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| In re | |
|---|---|
| SKS Bottle and Packaging, Inc., | Chapter 11<br>Case No. 24-11283 |
| Debtor. | |

**ORDER APPROVING SALE OF SKS BOTTLE AND PACKAGING, INC.'S ASSETS AND, IF ANY, THE ASSUMPTION & ASSIGNMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES UNDER 11 U.S.C. §§ 363 & 365**

Upon consideration of the Motion filed by SKS Bottle and Packaging, Inc., the above-captioned debtor and debtor in possession ("SKS" or, the "Debtor"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), as supplemented by Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (this "Bidding Procedures Order"): (i) approving bidding procedures in connection with the sale of substantially all of the Debtor's assets; (ii) scheduling an auction and a hearing to consider and approve the sale; (iii) approving the form and manner of notice thereof; (iv) approving the terms of the Stalking Horse APA and the proposed Bid Protection Amount; and (v) granting related relief (ECF No. 43) (the "Motion"); the Court's Order entered on February 26, 2025 (ECF No. 55) (the "Bidding

Procedures Order", and the bidding procedures approved by such Bidding Procedures Order, the "Bidding Procedures"), the sale transaction represented by the Stalking Horse APA (as amended or modified by this Order, the "APA") by and between SKS and Pipeline Packaging Corporation or its assignee (the "Stalking Horse Purchaser" or the "Buyer"), and upon the record of the sale hearing held on March 12, 2025 and the Bidding Procedures, all of which are incorporated herein by reference;

**IT IS HEREBY FOUND AND DETERMINED THAT**:

    A.    Jurisdiction & Venue: This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1134. Approval of SKS's entry into the Stalking Horse APA, and the transaction contemplated thereby (the "Sale Transaction"), is a core proceeding under 28 U.S.C. §§ 157(b)(2). Venue of these cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

    B.    Predicates for Relief. The legal predicates for the relief granted herein are sections 363(b), 363(f), 363(m), 365, 541(a), 1107 and 1108 of the Bankruptcy Code and rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure.

    C.    Notice: Proper, timely, and sufficient notice of the Motion, Bidding Procedures, Sale Transaction, proposed assumption and assignment of the Assumed Executory Contracts (as defined in the APA) through the Notice of Assumption and Assignment (the "Cure Notices"), and Sale Hearing has been provided under Bankruptcy Code sections 102(1), 105(a), and 363, 365, Bankruptcy Rules 2002, 4001, and 6004, the Local Rules and Bidding Procedures Order. No further notice is required.

D. **Opportunity to Object**. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

E. **Marketing & Sale Process**: The Debtor actively sought out prospective purchasers both pre- and post-petition and offered all parties in interest and prospective purchasers a reasonable and fair opportunity to bid for the Acquired Assets (as defined in the APA), and conducted the marketing and sale process in good faith. The Bidding Procedures were fair to all parties and all prospective bidders.

F. **Sale Transaction Agreement**: In accordance with the Bidding Procedures, the Buyer was determined to be a Qualified Bidder (as defined in the Bidding Procedures), and the APA was a Qualified Bid (as defined in the Bidding Procedures). A true and correct copy of the APA is attached hereto as Exhibit A.

G. **Business Judgment**: In accordance with the Bidding Procedures, SKS determined in a valid and sound exercise of its business judgment consistent with its fiduciary duty, that the highest or otherwise best Qualified Bid for the Acquired Assets was that of the Buyer. SKS's decision to enter into and perform under the APA is in the best interests of SKS, its estates, their creditors, and all other parties in interest.

H. **Sale Free and Clear**: Except with respect to any Assumed Obligations and Permitted Liens (as defined in the APA), a sale of the Acquired Assets other than one free and clear of all interests, to the fullest extent permitted by section 363(f) of the Bankruptcy Code (the "Encumbrances"), and without the protections of this Sale Order would hinder SKS's ability to obtain the consideration provided for in the APA and, thus, would impact materially and adversely the value that SKS's estate would be able to obtain for the sale of such Acquired Assets.

I. <u>Good Faith/Arm's-length Sale</u>: The consideration to be paid by the Buyer under the APA was negotiated at arm's-length and constitutes reasonably equivalent value and fair consideration for the Acquired Assets. The Sale Transaction was negotiated and entered into in good faith as that term is used in Bankruptcy Code sections 363(m) and 364(e).

J. <u>Legal, Valid Transfer</u>. The Acquired Assets constitute property of SKS's estate and title thereto is presently vested in SKS's estate within the meaning of Bankruptcy Code section 541(a). The sale of the Acquired Assets to the Buyer will be, as of the Closing Date or such later date as such Acquired Assets are transferred under the APA, a legal, valid, and effective transfer of such Acquired Assets, and each transfer and assignment vests or will vest the Buyer with all right, title, and interest of SKS to the Acquired Assets free and clear of all Encumbrances (other than with respect to any Assumed Obligations and the Permitted Liens).

K. <u>Assumption and Assignment of the Assumed Executory Contracts</u>: The assumption and assignment of the executory contracts and unexpired leases of SKS that may be assumed and assigned in connection with the Sale Transaction (as such contracts and leases may be amended, supplemented, or otherwise modified prior to assumption and assignment without further order of this Court with the consent of SKS, the Contract Counterparty, and the Buyer) (the "<u>Assumed Executory Contracts</u>") is integral to the APA. SKS has met all requirements of Bankruptcy Code section 365(b) for each of the Assumed Executory Contracts. Buyer has demonstrated adequate assurance of its future performance under the relevant Assumed Executory Contracts pursuant to Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).

L. <u>No Successor Liability</u>: The Buyer is not and shall not be deemed a successor to SKS as a result of the consummation of the Sale Transaction.

4934-5878-3782, v. 1

    M. <u>No Third-Party Beneficiaries</u>. Nothing in the APA creates any third-party beneficiary rights in any entity not a party to the APA.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

A. **Motion Granted, Objections Overruled**

   1. The relief requested in the Motion is granted as set forth herein. Any remaining objections or reservations of rights regarding the Motion or the relief requested therein that have not been withdrawn, waived, or settled are overruled with prejudice and denied. All parties and entities that failed to timely object thereto are deemed to consent to the relief sought therein.

B. **The APA Is Approved and Authorized**

   2. The APA and the Sale Transaction, as modified below in this paragraph, are hereby approved:

A. Section 2.1(a)(i) of the APA is amended to reflect that the following assets are included as Acquired Assets and will be conveyed free and clear of all liens and encumbrances:

- Raymond Reach (Model 7500R45TT; Serial Number 750-13AC39707)
- Enersys Battery (Model 18NXS700; Serial Number RUH00147575)

B. Section 2.3 of the APA is amended to reflect that the following assets will not be sold to the Buyer by adding at the end of Section 2.3:

- For the avoidance of doubt, the following leasehold improvements located at the Saratoga facility are not Acquired Assets:

| System No. | Location | Description | Date Acq. |
|---|---|---|---|
| 281 | NY | Doorbell system | 12/1/2018 |
| 282 | NY | Wildeck safety gate | 12/16/2018 |
| 285 | NY | Mahoney | 10/31/2018 |
| 304 | NY | Noise Proofing-FCC | 10/31/2018 |
| 315 | NY | Security Film - 6 Kitroom Windows | 6/27/19 |
| 316 | NY | Wired Compressor, added buzzer, etc. | 7/1/19 |

| | | | |
|---|---|---|---|
| **318** | NY | Tech II - New camera's for warehouse | 8/8/19 |
| **321** | NY | Tech II - 26 New camera's for warehouse | 10/7/19 |
| **331** | NY | Window Frosting on interior glass | 12/1/19 |
| **333** | NY | Additional lights in warehouse | 12/1/19 |
| **364** | NY | Street signs | 5/15/2019 |

C.  Section 8.3 of the APA is deleted in its entirety and replaced with:

> 8.3 <u>Leases</u>.  (a) Buyer and the landlord (the "**Landlord**") of the Operating Location located at 10 Skyward Lane, Saratoga Springs, New York, shall have entered into a new sublease on terms satisfactory to Buyer in its sole discretion (the "**Saratoga Lease**") and (b) Buyer shall have entered into a new sublease for warehouse space (the "**Warehouse Lease**") on terms satisfactory to Buyer in its sole discretion.

D.  Schedule 2.1(a)(iv) to the APA is amended to reflect that only the following contracts are Assumed Executory Contracts pursuant to Section 2.1(a)(iv):

- "PayPal Agreement - Amendment to PayPal Agreement" dated 10/14/2020 by and between SKS Bottle and Packaging, Inc. and PayPal.
- "Carrier Agreement" dated 03/07/2023 by and between SKS Bottle and Packaging, Inc. and UPS.

E.  Schedule 4.4(b) to the APA "ACQUIRED ASSETS As of 01/31/2025" is deleted in its entirety and replaced with Schedule 4.4(b) "ACQUIRED ASSETS As of 01/31/2025 - FINAL".

F.  Schedule 4.7 to the APA is amended to replace the title "REAL PROPERTY OF SELLER" with "REAL PROPERTY USED BY SELLER".

G.  Schedule 4.10 to the APA is amended to include the prepetition eviction proceeding commenced by GMES in Saratoga Springs City Court:

- *Green Mountain Electric Supply Inc. v. SKS Bottle and Packaging, Inc.*, Index No. LT-0873-24 (the "<u>Eviction Proceeding</u>")

3.  Subject to the provisions of this Sale Order, SKS and the Buyer are hereby authorized, to (a) consummate the Sale Transaction in accordance with the APA, (b) assume and assign to Buyer all Assumed Executory Contracts, if any, as and when provided in the APA, (c) execute such documents and perform such acts as are necessary or desirable to carry out the Sale Transaction and effectuate the APA, and (d) perform all other obligations under the APA,

6

including Debtor immediately taking any and all actions necessary to effectuate a name change from SKS Bottle and Packaging, Inc. to Wind-Down Bottle and Packaging, Inc., including without limitation authorizing Buyer to file an amendment to Debtor's Certificate of Incorporation with the New York Department of State, Division of Corporations, to change the name of Debtor from "SKS Bottle and Packaging, Inc." to "Wind-Down Bottle and Packaging, Inc.". To implement this required name change, Debtor has notified the Court and all parties in open court that Debtor shall cause the caption of this case to reflect Wind-Down Bottle and Packaging, Inc. as the name of the Debtor by promptly filing an Amended Petition with the Clerk of the Court and upon receipt of the amended petition, the Clerk's office is authorized to change the name on the caption to reflect that of the amended petition.

4. As part of consummating the Sale Transaction, the Debtor is authorized to pay the following claims at closing: (i) GMES's Secured Claim in the amount of $842,000.00 plus interest as set forth in the *Final Order Authorizing the Debtor's Use of Cash Collateral* (the "Cash Collateral Order") [Dkt. No. 34], and (ii) GMES's Administrative Claim in an amount to be calculated in accordance with the remainder of this paragraph. Pursuant to the Cash Collateral Order, GMES was granted an administrative expense claim for unpaid post-petition rent during a portion of November 2024 through January 2025 in the amount of $244,569.94, and a post-petition lien on all of the Debtor's assets for the portion of such amount representing the January 2025 rent ($100,507.94). The GMES Administrative Claim also includes rent for February 2025 and March 2025 (or so much thereof as is allocable to the period during the Debtor's continued occupancy), at the rate of $100,507.94 per month.

4934-5878-3782, v. 1

5. Notwithstanding anything to the contrary contained in Article III of the APA, the Court hereby directs Buyer at closing to pay the Purchase Price (as defined in the APA) to Whiteman Osterman & Hanna LLP as counsel for the Debtor to hold in trust on behalf of the Debtor.

**C.    Sale and Transfer Free and Clear of Encumbrances**

5. The conditions of section 363(f) have been satisfied in full, including, specifically, that known creditors having or asserting Encumbrances on the Acquired Assets have consented to the Sale or can be compelled to accept a money satisfaction of such interest, or that any such asserted Encumbrances are less than the value of all liens on the Acquired Assets or are in bona fide dispute, in each case pursuant to section 363 of the Bankruptcy Code.

6. Upon Closing, all of SKS's legal, equitable and beneficial right, title, and interest in and to, and possession of, the Acquired Assets shall be immediately vested in the Buyer free and clear of all Encumbrances (other than with respect to any Assumed Obligations, Permitted Liens, or as otherwise provided herein) to the fullest extent permissible pursuant to section 363(f) of the Bankruptcy Code. Such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets and shall vest Buyer with good and marketable title to the Acquired Assets.

7. As of the Closing Date, to the fullest extent permitted by law, the Buyer is authorized to operate under any license, permit, insurance policy, registration, and governmental authorization or approval of SKS constituting Acquired Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, authorized to be transferred to the Buyer as of the Closing Date as provided by the APA to the

fullest extent permitted by law. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Acquired Assets sold, transferred, assigned, or conveyed to the Buyer on account of the filing or pendency of the Chapter 11 Cases or the consummation of the Sale.

8. The holders of claims, if any, related solely to any Assumed Obligations shall seek payment directly from the Buyer on account of such Assumed Obligations; *provided, however,* that the Buyer reserves any and all rights, defenses, or objections with regard to such Assumed Obligations, including the Buyer's rights hereunder and under the APA. Anything herein to the contrary notwithstanding, Buyer's agreement hereunder (whether listed in a schedule or in a separate document) to pay a portion of any particular debts or liabilities of SKS owing to any third party or Buyer's actual payment of any such debts or liabilities shall not render Buyer liable to such third party for other debts or liabilities that may owing to them by Debtor or liable to other parties who did not receive any such payments from Buyer.

9. All parties with or asserting Encumbrances against the Acquired Assets (a) have or are deemed to have consented to the Motion pursuant to section 363(f)(2) of the Bankruptcy Code, (b) can be compelled to accept a monetary satisfaction of their Encumbrances within the meaning of section 363(f)(5) of the Bankruptcy Code and, in each case, are estopped and barred from taking any action against the Buyer, its affiliates or any agent of the foregoing to recover any claim that such person or entity has solely against the Debtor or any of its affiliates, (c) have or have asserted Encumbrances against the Acquired Assets of a value lesser than the price at which such Acquired Assets are to be sold pursuant to section 363(f)(3) of the Bankruptcy Code, or (d) have or have asserted Encumbrances against the Acquired Assets that are in bona fide dispute within the meaning of section 363(f)(4) of the Bankruptcy Code. Therefore, the transfer of the Acquired Assets to the

4934-5878-3782, v. 1

Buyer under the APA as of the Closing shall be a legal, valid, and effective transfer of the Acquired Assets, and, except as expressly permitted under the express terms of the APA, shall vest the Buyer with all right, title, and interest of SKS to the Acquired Assets free and clear of all Encumbrances (other than any Assumed Obligations or Permitted Liens). For the further avoidance of doubt, and without limiting the effect of any of the foregoing, the transfer, assumption and assignment, of any of the Assumed Executory Contracts shall be free and clear of all Encumbrances, other than the contractual commitments being assumed by the Buyer following assignment thereof. If any person or entity that has filed a mechanic's and/or materialmen's lien, deed of trust, mortgage, judgment lien, financing statement, or other document or agreement evidencing a lien, claim, encumbrance, or interest in, on, or against the Acquired Assets shall not have delivered to the Buyer at or prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Encumbrances that the person or entity has against any of the Acquired Assets, either the Debtor or the Buyer are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity after the occurrence of the Closing Date. The Debtor reserves all rights with respect to the priority, amount and characterization of any claims against the Debtor's estate, and with respect to the secured status and amount of any purported liens asserted by any person or entity.

10. Unless related to an Assumed Obligation pursuant to sections 105(a) and 363 of the Bankruptcy Code, effective as of the Closing Date, all persons are hereby forever barred and estopped from taking any action against the Buyer or the Buyer's affiliates (as they exist immediately prior to the Closing) to recover or enforce any lien, claim, interest, or encumbrance that such person has against the Acquired Assets as of the Closing Date.

11.

4934-5878-3782, v. 1

**D.      Order Binding**

12. This Sale Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Acquired Assets. The Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the sale free and clear of all Encumbrances (other than with respect to any Assumed Obligations or Permitted Liens) against the Buyer and the Acquired Assets. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

13. All government agencies and all other persons are hereby authorized to accept any documents and instruments necessary or appropriate to consummate the Sale Transaction and this Sale Order, and are authorized to remove all recorded liens against the Acquired Assets from their records other than with respect to any Assumed Obligations or Permitted Liens.

14. This Sale Order and the terms and provisions of the APA shall be binding on all of SKS's creditors (whether known or unknown), SKS, the Buyer, and their respective affiliates, successors, and assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of SKS under chapter 7 or chapter 11 of the Bankruptcy Code, and any affected third parties including, but not limited to, all persons asserting an interest in or to any of

the Acquired Assets. The provisions of this Sale Order and the APA, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan of SKS or converting SKS's cases to chapter 7.

15. To the extent applicable, the counterparties to the Assumed Contracts, if any, are forever bound by the applicable Cure Amounts and, upon payment of such Cure Amounts as provided for herein, are hereby enjoined from taking any action against the Buyer, the Buyer's property (including, without limitation, the Acquired Assets), and the Buyer's successors, assigns, affiliates and representatives with respect to any claim for cure under the applicable Assumed Executory Contracts.

**E.    Good Faith**

16. SKS and Buyer entered into the Sale Transaction in good faith. Buyer is entitled to all of the benefits and protections of Bankruptcy Code sections 363(m) and 364(e), and the Sale Transaction is not subject to avoidance under Bankruptcy Code section 363(n). The reversal or modification on appeal of this Sale Order shall not affect the validity of the Sale Transaction, unless such authorization is duly stayed pending such appeal.

**F.    No Successor or Transferee Liability**

17. Except as expressly provided in the APA with respect to any Assumed Liabilities, Buyer shall (a) have no liability whatsoever with respect to the Debtor's (or their predecessors or affiliates) businesses or operations or any of the Debtor's (or their predecessors or affiliates) obligations, and (b) not be deemed to be a successor to SKS as a result of any action taken in connection with the APA, the consummation of the Sale Transaction, or the transfer of the Acquired Assets.

12

**G.     Assumption and Assignment of Purchased Contracts**

18.    To the extent applicable, SKS is authorized to assume and assign to the Buyer each of the Assumed Executory Contracts, if any, pursuant to the terms of the APA, free and clear of all Encumbrances.

19.    To the extent applicable, the payment of the Cure Amounts by the Buyer under the APA and this Sale Order (or such other amount agreed to by any party to a Assumed Executory Contract and SKS with the prior written consent of the Buyer) (a) cures all monetary defaults existing thereunder as of the assignment of the Assumed Executory Contracts to the Buyer in accordance with the terms of the APA; (b) compensates the applicable Contract Counterparties for any actual pecuniary loss resulting from such default; and (c) together with the assumption of the Assumed Executory Contracts by SKS and the assignment of the Assumed Executory Contracts to the Buyer constitutes adequate assurance of future performance thereof.

20.    To the extent that any Contract Counterparty to a Assumed Executory Contract did not timely file an adequate assurance objection by the Contract Objection deadline, such Contract Counterparty is deemed to have consented to the assumption and assignment of the Assumed Executory Contract pursuant to the terms of this Sale Order, and all such objections that were timely filed and not subsequently withdrawn are overruled.

21.    To the extent that any Contract Counterparty to an Assumed Executory Contract did not timely file a Contract Objection by the Contract Objection Deadline, such Contract Counterparty is deemed to have consented to the assumption and assignment of the Assumed Executory Contract pursuant to the terms of this Sale Order. All objections that were timely filed and not withdrawn are overruled.

22.    Any provision in any Assumed Executory Contract that prohibits or conditions the assignment of such Assumed Executory Contract or allows the Contract

Counterparty to such Assumed Executory Contract to impose any penalty, fee, rent increase, profit sharing arrangement or other condition on renewal or extension, or to modify any term or condition upon the assignment of such Assumed Executory Contract, constitutes an unenforceable anti-assignment provision that is void and of no force and effect in connection with the Sale Transaction and the assumption and assignment of the Assumed Executory Contract in connection therewith.

23. Upon the assignment of the Assumed Executory Contracts, if any, to the Buyer in accordance with the terms of the APA, the Buyer shall be deemed to be substituted for SKS as a party to the applicable Assumed Executory Contracts, and the Debtor and its estate shall be released, pursuant to Bankruptcy Code section 365(k), from any liability for any breach of the Assumed Executory Contract occurring after such assignment. There shall be no assignment fees, increases, or any other fees charged to the Buyer or the Debtor as a result of the assumption and assignment of the Assumed Executory Contracts.

24. Each Contract Counterparty to an Assumed Executory Contract is forever barred, estopped, and permanently enjoined from asserting against the Debtor or the Buyer or their respective property (including, without limitation, the Acquired Assets), successors, assigns, affiliates and representatives, in connection with this transaction (a) any penalty, fee or condition to assignment existing, arising or accruing as of the Closing Date (as such term is defined in the APA); (b) any claimed default or breach that is inconsistent with the Cure Amounts that have been determined with respect to such Assumed Executory Contract; and (c) any contention that the Assumed Executory Contract has not been validly assumed and assigned.

25. Other than the Assumed Executory Contract, if any, the Buyer shall assume none of SKS's other contracts or leases, and shall have no liability whatsoever thereunder.

**H.     Other Provisions**

28. <u>No Bulk Sales</u>. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction.

27. <u>Modifications</u>. The APA and any related agreements or documents may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court; <u>provided</u> that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate.

28. <u>Automatic Stay</u>.   Cause exists and the automatic stay pursuant to Bankruptcy Code section 362 is thus hereby lifted with respect to SKS to the extent necessary to allow the Buyer to take any and all actions and deliver notices permitted or required under the APA without further order of this Court.

29. <u>No Stay of Order</u>. Time is of the essence in consummating the Sale Transaction. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), and 7062, this Sale Order shall be effective and enforceable immediately upon entry, and its provisions shall be self-executing; this Court thus expressly finds that there is no just reason for delay in the implementation of this Order and expressly waives any stay thereon.

30. <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction to interpret, implement, and enforce this Sale Order, the Bidding Procedures, the APA, and all documents executed in connection with the Sale Transaction.

###

4934-5878-3782, v. 1